No. 88-494

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

MARION LORASH,

　　　　　Plaintiff and Appellant,

　　-vs-

LARRY D. EPSTEIN, and JAMES C. NELSON,
d/b/a WERNER, NELSON & EPSTEIN,

　　　　　Defendants and Respondents.

APPEAL FROM:　District Court of the Ninth Judicial District,
　　　　　　　　In and for the County of Glacier,
　　　　　　　　The Honorable R.D. McPhillips, Judge presiding.

COUNSEL OF RECORD:

　　　　For Appellant:

　　　　　　Sweeney & Healow; Kevin T. Sweeney, Billings, Montana

　　　　For Respondent:

　　　　　　Floyd D. Corder; Alexander & Baucus, Great Falls,
　　　　　　Montana

Filed: FILED '89 JAN 27 AM 11 50 ED _____ CLERK MONTANA SUPREME COURT

Submitted on Briefs:　Dec. 16, 1988

Decided:　January 27, 1989

Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.

Appellant appeals the order of the Ninth Judicial District Court, Glacier County, Montana, granting the defendant's motion for summary judgment upon finding plaintiff presented no material facts proving that the defendants committed legal malpractice. We affirm.

Appellant, Marion Lorash, the owner of a glass business in Cut Bank, Montana, entered into a partnership with one Chad Standish to operate an auto repair business in Browning, Montana. The partners contacted Wilbur Werner, a law partner in the firm of Werner, Nelson and Epstein, for the purpose of drafting a partnership agreement. The partnership agreement was prepared and executed in March of 1982. The partners constructed a building, in which they intended to operate the auto repair business, on land owned by Standish. The partnership began using the building for the auto repair business in August, 1982. By December, 1982, the partners were aware that the business was not going to succeed. They discussed ways in which the appellant could protect his interest in the partnership. They decided that the best way would be for the appellant to file a lien against the building and the land on which the building stood. In December of 1982 or January of 1983, appellant contacted defendant Epstein for the purpose of securing his interest in the labor and materials contributed to the building. Defendant Epstein agreed to prepare a mechanic's lien which would secure plaintiff's interest. Mr. Lorash provided a schedule of the labor and materials he supplied for the building and a property description. After appellant supplied the necessary data, defendant Epstein drafted the mechanic's lien which was then filed on March 18, 1983. Nothing further happened regarding the mechanic's lien until

December, 1984, when the appellant was contacted regarding an incorrect legal description on the mechanic's lien which affected another person's property. Appellant contacted the defendant Epstein, who determined from an examination of the mechanic's lien statute and conversations with the title company manager that there was no problem regarding the validity of the lien. This information was communicated to the appellant.

In March or April of 1985, appellant was notified that Mr. Standish had filed bankruptcy. Concerned with the effect of the bankruptcy on the mechanic's lien, appellant then contacted defendant Epstein. After consultation with his partner Mr. Nelson, defendant Epstein informed the appellant that due to a conflict of interest he was unable to represent him in foreclosing the lien. The conflict arose due to defendant Nelson's position as the county attorney and Mr. Epstein's position as deputy county attorney, and the fact the county attorney's office was conducting an investigation in which the appellant was involved.

The appellant then contacted another attorney in Cut Bank to attempt to foreclose the mechanic's lien and protect his claim in Mr. Standish's bankruptcy. That attorney was unsuccessful in establishing a priority claim based upon the mechanic's lien, due to the running of the statute of limitations under Montana law. As a result, appellant was only able to establish an unsecured claim in the bankruptcy action and received nothing when the bankruptcy court discharged his claim.

Appellant then brought this legal malpractice action seeking the value of the lien, approximately $24,000, lost due to the alleged: (1) negligent withdrawal of counsel from representation, and (2) defendants' negligent failure to foreclose the mechanic's lien.

Defendants filed a motion for summary judgment citing five independent and separate grounds for dismissing the

action. The District Court, having reviewed the entire file and heard oral arguments, held there were no relevant factual matters in dispute and that defendants were entitled to judgment as a matter of law on both counts.

Rule 56(c), M.R.Civ.P., provides that summary judgment is appropriate when "[t]he pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Generally negligence issues will not be susceptible to summary judgment because of the factual issues involved in such cases. See Brohman v. State of Montana (Mont. 1988), 749 P.2d 67, 69, 45 St.Rep. 139, 141, and cases cited therein. In a summary judgment proceeding, plaintiffs are entitled to all reasonable inferences which may be drawn from the offered proof and which indicate any issue of fact which would thereby defeat the summary judgment motion. Brown v. Merrill, Lynch, Pierce, Fenner and Smith, Inc. (1982), 197 Mont. 1, 640 P.2d 453. However, an issue of negligence cannot be inferred merely from the fact that a loss has occurred. Carlson v. Morton (Mont. 1987), 745 P.2d 1133, 44 St.Rep. 1929. To establish a professional negligence action "the plaintiff must prove that the professional owed him a duty, [and] that the professional failed to live up to that duty, thus causing damages to the plaintiff." Carlson, 745 P.2d at 1136.

In pursuing a negligence or breach of contract action against an attorney, the plaintiff must initially establish the existence of an attorney-client relationship. The plaintiff must then establish that the acts constituting the negligence or breach of contract occurred, proximately causing damages to the plaintiff. The final requirement for the plaintiff is the need to establish "[t]hat 'but for' such negligence or breach of contract the client would have been

successful in the prosecution or defense of the action." Christy v. Saliterman (Minn. 1970), 179 N.W.2d 288, 293-294.

## A. Duty to Foreclose the Mechanic's Lien

The plaintiff in the case at bar has simply failed to establish an attorney-client relationship which would require the defendants to foreclose the mechanic's lien. Montana has not recognized the doctrine of continuous representation, which may have required the defendants to continue to represent plaintiff regarding the mechanic's lien. Schneider v. Leaphart (Mont. 1987), 743 P.2d 613, 617, 44 St.Rep. 1699, 1703. To establish a duty owed to continue to represent the plaintiff, the plaintiff would need to show the existence of a retainer agreement or a specific agreement between the parties that the defendants would foreclose the mechanic's lien. We note that neither party cites any specific authority on the question of whether or not an attorney who drafts a mechanic's lien has a duty to foreclose that lien.

Appellant claims he had used defendants' law firm for various dealings over a period of several years, both before and after the mechanic's lien was drawn. However, the appellant's deposition states he was not sure he "had call" to have an attorney prior to the drafting of the partnership agreement. Further, the first time he met defendant Epstein on a professional basis was when he contacted him regarding the drafting of the mechanic's lien. The appellant stated in his deposition he had no further contact with Mr. Epstein from the time he signed the lien, until he contacted him regarding the error in the property description, in early 1985.

Also, appellant's deposition shows a retainer agreement did not exist between himself and the law firm.

> Q. The law firm of Werner, Nelson &
> Epstein were not on retainer to you or
> anything; it was just simply when you

5

> needed work done you called and asked if
> they could do it for you?
>
> A. Yes. That's correct.

Even under the continuous representation doctrine, such an on
and off history of representation would not establish a duty
on the part of an attorney to monitor the activities of their
clients. See, Shapero v. Fliegel (1987), 236 Cal.Rptr. 696,
699. This is particularly so where the attorney had acted as
a scrivener in preparing documents which a client inferred
they did not intend to use.

> Q. When you filed this Mechanic's Lien
> did you intend to foreclose on the lien?
>
> A. As a last resort, yes, I did.
>
> Q. Why did you wait until March of 1985
> to begin any action on the foreclosure of
> the lien?
>
> A. Because I didn't want to use--- I
> didn't want that to keep him from being
> able to borrow the money to pay me off.

Based upon the foregoing deposition testimony which the
District Court had before it, we find the order granting
summary judgment was proper. Appellant failed to establish
the existence of a duty owing by the defendants to the
appellant to foreclose the mechanic's lien.

B. Negligent Withdrawal of Counsel

Appellant contends that the defendants negligently
withdrew from their representation of appellant. This
contention is fatally flawed, however, in light of the fact
that no representation existed. Appellant asserts that this
case involved a collection action and that the defendants
were obligated to pursue the collection action to a
conclusion once they accepted representation. 7 Am.Jur.2d,
Attorneys at Law, § 211. This contention ignores the fact
that the appellant himself forestalled the foreclosure of the
mechanic's lien. Mr. Lorash acknowledges he did not intend

6

to foreclose the lien except as a last resort. Further, he did not communicate a desire to foreclose the lien until he was notified that Mr. Standish was in bankruptcy. As Mr. Lorash had been informed of the two year statute of limitations which applied to the mechanic's lien, and was the party who forestalled its foreclosure, we find the defendants did not have a duty to foreclose the mechanic's lien. Further, representation had been terminated as to the mechanic's lien, pending further action on Mr. Lorash's part, and there could not be a negligent withdrawal.

Having found that no duty existed for the defendants to foreclose the mechanic's lien, the parties' arguments whether or not the mechanic's lien involved in this case was valid and enforceable become moot.

The decision of the District Court is affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices