No. 97-251

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 27

TOM AND NIKKI KONITZ,

Plaintiffs and Respondents,

v.

TERRY CLAVER, d/b/a GLASSCO LUMBER,

Defendant and Appellant.

FILED

FEB 12 1998

C. Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:     District Court of the Tenth Judicial District,
                 In and for the County of Judith Basin,
                 The Honorable John R. Christensen, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

                Patrick F. Flaherty, Attorney at Law,
                Great Falls, Montana

        For Respondents:

                Monte J. Boettger, Attorney at Law,
                Lewistown, Montana

Submitted on Briefs: December 23, 1997

Decided:   February 12, 1998

Filed:

_____
                    Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

¶1 Tom and Nikki Konitz filed a complaint in the District Court for the Tenth Judicial District in Judith Basin County to recover payment for the sale of timber to Terry Claver. Claver filed a counterclaim in which he asserted that the timber was defective. Konitzes moved for summary judgment and filed affidavits in support of the motion. The District Court granted Konitzes' motion for summary judgment and dismissed Claver's counterclaim. Claver appeals. We affirm the order and judgment of the District Court.

¶2 Four issues are raised by Claver on appeal:

¶3 1. Did the District Court err when it granted the motion for summary judgment and awarded the relief sought by Konitzes?

¶4 2. Did the District Court err when it denied Claver the opportunity to offer additional testimony at the hearing and in subsequent affidavits?

¶5 3. Did the District Court err when it granted the motion for summary judgment while discovery was still pending?

¶6 4. Did the District Court err when it dismissed Claver's counterclaim by summary judgment?

## FACTUAL BACKGROUND

¶7 Terry Claver orally agreed in approximately February 1995, to purchase timber from Tom and Nikki Konitz. Konitzes agreed to harvest the timber from their land in Fergus County and deliver it to Claver's business in Stanford; Claver personally moved the first load

of timber. Claver planned to use the timber for posts and poles. The parties dispute whether Claver was to pay $33 per ton or $30 per ton for timber delivered.

¶8 Konitzes contracted with local loggers and truck drivers to harvest and transport the timber to Claver. During the next five months, Claver received approximately fifty loads of timber, equal to approximately 1,400 tons. For the majority of the deliveries, Claver was present and inspected the timber. On at least two occasions, however, he told the truck driver who delivered the timber that he did not want to receive "any more loads like that." Claver also traveled at least twice to Konitzes' land where the timber was being logged to discuss with the contractor the quality of the timber that was being delivered and to point out the kind of timber that he expected.

¶9 He contends that a large portion of the timber that he received was defective and was not lodgepole pine, the species that he and Konitz had agreed upon. Claver contacted Tom Konitz by telephone about the deficiencies in the timber and contends that Konitz came to the mill and made assurances to work out the matter. Claver went ahead and processed the timber that met his requirements into posts. He contends that approximately 35-40 percent of the timber consisted of waste, which he has stored on his property and attempted to resell but without success.

¶10 In March 1995, Claver paid Konitzes $12,000. He made a second payment of $10,000 in June 1995. No other payments have been made. There was no indication when the payments were made whether they were being made at a rate of $33 or $30 per ton of timber.

Konitzes produced statements from their records which indicated the amount due was based on a rate of $33 per ton. In October 1995, and the three months following, Konitzes sent a copy of the statements to Claver, along with the amounts and dates of delivery and the balance outstanding, including interest charges. They contend that Claver still owes over $26,000, and that not until April 1996, did he object to any of the statements.

¶11 On May 22, 1996, Konitzes filed a complaint in the District Court to collect the remaining balance. On July 29, 1996, Claver filed an answer and counterclaim. His answer asserted four affirmative defenses: (1) the complaint failed to state a claim; (2) the contract was unenforceable because it had not been reduced to writing, as required by the statute of frauds; (3) the contract was unenforceable due to lack of consideration; and (4) the contract was induced by fraud and misrepresentation. The counterclaim sought damages, including punitive damages, for the torts of trespass, nuisance, constructive fraud, and negligent misrepresentation, based upon a breach of warranty and Konitzes' subsequent failure to remove the timber from Claver's land.

¶12 On August 14, 1996, the District Court ordered, after a pretrial scheduling conference, that all discovery be completed by December 30, 1996, and that all motions and supporting briefs be filed by December 27, 1996. It set the final pretrial conference for January 13, 1997. On December 27, 1996, Konitzes moved for summary judgment and filed a brief and affidavits in support of the motion, and in the alternative, moved to dismiss Claver's affirmative defenses and counterclaim. Their basis for claiming a right to summary judgment

was that Claver had not rejected the timber and, pursuant to the Uniform Commercial Code, he was therefore bound to make payment for the deliveries.

¶13 On January 7, 1997, Claver filed an affidavit in opposition to the summary judgment motion, in which he asserted that the quality of the timber was "hit and miss" and that certain loads were "reprehensible," while the timber was "defective in every known way to the timber industry and the worst junk timber I have ever received." He also stated that he gave Tom Konitz notice of rejection, and he offered telephone records along with the affidavit to show that he called Tom and the contractor at least a dozen times to complain. That same day, he sought and received from the District Court an extension of time to respond to the motion for summary judgment. His reply brief maintained that genuine issues of fact were raised by Claver's affidavit which precluded summary judgment.

¶14 At the hearing on January 13, 1997, the District Court indicated its inclination to grant summary judgment, at which point Claver's counsel requested that Claver be allowed to testify "to amplify what I think are factual issues [in] his affidavit, his verified answer and counterclaim, and his answers . . . to the discovery." At the conclusion of the hearing, Claver also sought permission to file a supplemental brief to address the legal issues that had been raised. Over Konitzes' objection, the District Court allowed Claver to file a supplemental brief.

¶15 Claver's reply brief repeated the objections that he had allegedly made to Konitz about the quality of the timber, and contended that he had rejected many of the loads. In addition

to the brief, Claver submitted seven new affidavits in opposition to the summary judgment motion. Konitzes subsequently filed a motion to strike the affidavits as untimely, pursuant to Rule 56, M.R.Civ.P. On March 26, 1997, the District Court granted the motion to strike and the motion for summary judgment, and dismissed Claver's counterclaim.

## ISSUE 1

¶16 Did the District Court err when it granted the motion for summary judgment and awarded the relief sought by Konitzes?

¶17 Our review of a district court's grant of summary judgment is *de novo* and considers whether the district court was correct as a matter of law. *See Schmidt v. State* (Mont. 1997), 54 St. Rep. 1321, 1322. We apply the same criteria used by the district court, based on Rule 56, M.R.Civ.P., to determine whether the moving party is entitled to judgment as a matter of law. *See Jarrett v. Valley Park, Inc.* (1996), 277 Mont. 333, 338, 922 P.2d 485, 487. In *Bruner v. Yellowstone County* (1995), 272 Mont. 261, 264, 900 P.2d 901, 903, we established that the moving party first must demonstrate that no genuine issue of material fact exists. The burden then shifts to the party opposing summary judgment to prove by more than mere denial and speculation that a genuine issue does exist. *See Bruner*, 272 Mont. at 264, 900 P.2d at 903; *see also Heiat v. Eastern Mont. College* (1996), 275 Mont. 322, 327, 912 P.2d 787, 791.

¶18 In our review of a motion for summary judgment, we view the evidence in the light most favorable to the party opposing the motion. *See Kaseta v. Northwestern Agency of*

6

*Great Falls* (1992), 252 Mont. 135, 138, 827 P.2d 804, 806; *Lorash v. Epstein* (1989), 236 Mont. 21, 24, 767 P.2d 1335, 1337.

¶19 Here, the District Court concluded that the affidavits offered by Konitzes established that they and Claver had formed a contract. They also led the District Court to conclude that only $22,000 had been paid for the timber, and that approximately $26,000 was still owed. When it shifted the burden to Claver, the District Court concluded from his affidavit and other parts of the record that he had in fact processed much of the timber, and that despite his assertion that he gave notice of rejection, Claver failed as a matter of law to make an effective rejection. The District Court held that the facts indicate that Claver accepted the timber which, pursuant to § 30-2-606, MCA, entitles Konitzes to recover. We agree with the District Court and, using the same criteria, conclude that Claver accepted the timber and is liable for the amount owed.

¶20 The agreement for sale and purchase of timber is governed by the Uniform Commercial Code as a sale of goods. *See* §§ 30-2-105(1) and -107(2), MCA (defining a contract for the sale of timber to be cut as a contract for the sale of goods). Therefore, we apply the terms of the statute to this matter.

¶21 Section 30-2-606, MCA, defines acceptance as follows:

> (1) Acceptance of goods occurs when the buyer:
>     (a) after a reasonable opportunity to inspect the goods signifies to the seller that the goods are conforming or that he will take or retain them in spite of their nonconformity; or

(b)     fails to make an effective rejection (subsection (1) of 30-2-602), but such acceptance does not occur until the buyer has had a reasonable opportunity to inspect them; or

(c)     does any act inconsistent with the seller's ownership; but if such act is wrongful as against the seller it is an acceptance only if ratified by him.

(2)     Acceptance of a part of any commercial unit is acceptance of that entire unit.

Furthermore, § 30-2-602, MCA, defines rejection as follows:

(1) Rejection of goods must be within a reasonable time after their delivery or tender. It is ineffective unless the buyer seasonably notifies the seller.

(2)     Subject to the provisions of the two following sections on rejected goods (30-2-603 and 30-2-604):

(a)     after rejection any exercise of ownership by the buyer with respect to any commercial unit is wrongful as against the seller; and

(b)     if the buyer has before rejection taken physical possession of goods in which he does not have a security interest under the provisions of this chapter (subsection (3) of 30-2-711), he is under a duty after rejection to hold them with reasonable care at the seller's disposition for a time sufficient to permit the seller to remove them; but

(c)     the buyer has no further obligations with regard to goods rightfully rejected.

(3)     The seller's rights with respect to goods wrongfully rejected are governed by the provisions of this chapter on seller's remedies in general (30-2-703).

¶22     Whether a buyer has accepted (or rejected) goods is ordinarily a question of fact. *See* 67 Am. Jur. 2d *Sales* §§ 632 and 649 (1985). However, where the evidence "admits of only one reasonable conclusion, the issue becomes one of law." 67 Am. Jur. 2d *Sales* § 632 (1985); *see also Fablok Mills, Inc. v. Cocker Mach. & Foundry Co.* (N.J. 1972), 294 A.2d 62, 64.

¶23 Claver contends that it is undisputed that some of the timber failed to satisfy the contract. Regardless of the timber quality, Konitzes contend that when Claver failed to make an effective rejection of the timber, he legally accepted it.

¶24 Their primary contention is that Claver's acts constitute an acceptance pursuant to § 30-2-606(1), MCA. When a buyer receives and puts goods to use, he generally has accepted them pursuant to § 30-2-606(1)(a) and (c), MCA. *See Montana Seeds, Inc. v. Holliday* (1978), 178 Mont. 119, 123, 582 P.2d 1223, 1225-26; *see also Chancellor Dev. Co. v. Brand* (Mo. 1995), 896 S.W.2d 672, 675. Moreover, a buyer's payment after delivery, although not determinative, signifies his acceptance of the goods. *See* 67 Am. Jur. 2d *Sales* § 627 (1985).

¶25 Here, Claver clearly inspected and processed the majority of the timber that he received. In addition, he made payments for the deliveries. That conduct is inconsistent with Konitzes' ownership of the timber and indicates, pursuant to § 30-2-606(1)(c), MCA, that he accepted the goods. Even if we assume that some of the timber was nonconforming, Claver's conduct constitutes an acceptance of the timber in spite of its nonconformance, pursuant to § 30-2-606(1)(a), MCA. Accordingly, mere statements from Claver that he gave notice of rejection of the timber are insufficient to overcome his actions, which unequivocally indicate an acceptance pursuant to the statute, and which fail to satisfy § 30-2-602, MCA, as an effective rejection.

9

¶26 The record indicates that Konitzes have met their initial burden of showing that no genuine issue of fact exists because Claver's conduct constitutes a statutory acceptance. In response, Claver continues to assert that in fact he rejected the timber, as shown by the notice that he gave and the timber that he has not used. However, § 30-2-606(2), MCA, states that "[a]cceptance of a part of any commercial unit is acceptance of that entire unit." Claver's actions constitute an acceptance of at least part of the timber, regardless of his actions regarding the nonconforming timber. He has failed to present any evidence or legal authority for the suggestion that the timber he accepted was somehow a separate commercial unit from that which he rejected. Therefore, there is no basis in the record to conclude that he is not liable for the unacceptable timber because it was a separate commercial unit. Consequently, Claver has failed to satisfy his burden, and we must conclude as a matter of law that he accepted all of the timber.

¶27 Therefore, we hold that there was no genuine issue of fact regarding whether he is liable for the outstanding balance, and that the District Court did not err when it held by summary judgment that Claver was liable for the balance due pursuant to the terms of his contract with Konitzes.

¶28 However, the District Court determined that the contract price was $33 per ton, based on Konitzes' pleadings, while Claver's affidavit in opposition to summary judgment stated that the contract price was only $30 per ton. The District Court erred when it failed to recognize the difference and used Konitzes' figure of $33 per ton to calculate the

outstanding balance. Therefore, while we conclude that there is no genuine issue of fact regarding Claver's liability for the balance due, we hold that the amount of that balance cannot be decided by summary judgment. Claver's affidavit creates an issue of fact regarding the rate agreed upon. If Konitzes wish to recover more than $30 per ton, they must do so after trial of that issue; they cannot do so as a matter of law.

## ISSUE 2

¶29  Did the District Court err when it denied Claver the opportunity to offer additional testimony at the hearing and in subsequent affidavits?

¶30  Claver sought to introduce testimony at the summary judgment hearing to "amplify" the alleged issues of fact  He made his request after the District Court indicated its inclination to grant summary judgment and without prior notice of his intention to do so. He now contends that the District Court erred when it refused to hear the testimony, based upon our holding in *Cole v. Flathead County* (1989), 236 Mont. 412, 771 P.2d 97.

¶31  We stated in *Cole* that "[o]ral testimony at the hearing may properly be considered on motions for summary judgment." *Cole*, 236 Mont. at 416, 771 P.2d at 99 (emphasis added).  We agree with Claver that a district court may allow a party to testify at a summary judgment hearing in order to establish the existence of genuine factual issues. We also agree, pursuant to Rule 56 and our holding in *Cole*, that the parties are entitled as a matter of right to a hearing on a motion for summary judgment. *See Cole*, 236 Mont. at 419, 771 P.2d at 101. However, Claver has offered no support for his contention that when

11

a district court conducts a hearing on a summary judgment motion, the party opposing the motion is entitled to testify without prior notice, and that it is error for the district court to disallow the testimony.

¶32 We review discretionary trial court rulings for an abuse of discretion. *See May v. First Nat'l Pawn Brokers, Ltd.* (1995), 270 Mont. 132, 134, 890 P.2d 386, 388. Discretionary trial court rulings include such things as trial administration issues, scope of cross-examination, post-trial motions, and similar rulings. *See Steer, Inc. v. Department of Revenue* (1990), 245 Mont. 470, 475, 803 P.2d 601, 604; *Harwood v. Glacier Electric Coop., Inc.* (Mont. 1997), 54 St. Rep. 1257, 1261. We conclude that the District Court's decision whether to allow Claver to testify at the summary judgment hearing was a discretionary ruling and is therefore subject to review for an abuse of discretion.

¶33 Here, in response to the motion for summary judgment, Claver submitted only a brief and his own affidavit to establish the existence of genuine issues of fact. He did so after a request for extension of time to respond to the motion. Despite his initial request for an extension, Claver did not make a request to the District Court to delay the hearing until he could submit additional evidence, nor did he make an offer of proof to demonstrate that his testimony would present facts not already before the District Court. In fact, Claver continues to assert on appeal that he "had met his burden of showing genuine factual issues by the pleadings alone and that no testimony was needed."

¶34 On January 15, 1997, just two days after the hearing, Claver prepared additional affidavits from six other individuals, including one of his own testimony, to oppose the motion and to indicate to the District Court that a genuine issue of fact existed. He gave no explanation why the affidavits were not timely filed prior to the hearing, or how they addressed the legal issues that had been raised at the hearing. Rule 56(c), M.R.Civ.P., requires the party opposing the motion to serve opposing affidavits *prior to* the day of hearing. As such, the affidavits were untimely.

¶35 Accordingly, we conclude that the District Court did not abuse its discretion when it denied Claver the additional opportunity to establish a genuine issue of fact through his testimony at the hearing, and when it granted Konitzes' motion to strike the additional affidavits.

ISSUE 3

¶36 Did the District Court err when it granted the motion for summary judgment while discovery was still pending?

¶37 The parties had arranged to conduct depositions of each other on January 13, 1997, after the hearing. However, during the hearing they agreed to postpone the depositions until the District Court ruled on the summary judgment motion. Claver contends that the District Court erred when it granted the motion prior to the completion of discovery.

¶38 Rule 56, M.R.Civ.P., imposes no requirement upon the District Court to delay its decision on a motion for summary judgment until the parties have completed discovery.

Rather, Rule 56(a), M.R.Civ.P., states that a party can move for summary judgment "at any time after the expiration of 20 days from the commencement of the action" and the very purpose of summary judgment is to eliminate the burden and expense of an unnecessary trial and trial preparation, including such things as discovery. *See Klock v. Town of Cascade* (Mont. 1997), 943 P.2d 1262, 1266, 54 St. Rep. 829, 831; *Berens v. Wilson* (1990), 246 Mont. 269, 271, 806 P.2d 14, 16.

¶39 The only relevant support that Claver offers for his contention that the District Court should postpone its decision until discovery is complete is Rule 56(f), M.R.Civ.P., which states that a district court may refuse the motion or order a continuance "to permit . . . depositions to be taken or discovery to be had" *when affidavits are unavailable.* Here, Claver had been aware since August 1996, of the District Court's order that all discovery be completed by December 30, 1996. He made no request to the District Court prior to the hearing for an extension to complete discovery, nor did he assert that he needed more of an opportunity to establish that a genuine issue of fact existed. In fact, within two days of the hearing he was able to produce seven additional affidavits. At no time did he assert that those affidavits had been unavailable earlier.

¶40 Accordingly, we hold that there are no legal or factual grounds to conclude that the District Court erred when it relied on the record before it and held prior to the completion of discovery that Konitzes were entitled to judgment as a matter of law.

14

ISSUE 4

¶41 Did the District Court err when it dismissed Claver's counterclaim by summary judgment?

¶42 Claver's counterclaim was predicated on the assumption that Konitzes were at fault in their "performance" of the agreement and that summary judgment is inappropriate. As we have held, however, the contract between the parties is governed by the U.C.C. Pursuant to its provisions, summary judgment is appropriate and Claver is liable for the outstanding balance. If Claver is to assert additional claims against Konitzes for their performance, they must be based strictly on the remedies provided to a buyer in the U.C.C.

¶43 Here, Claver has made a variety of factual allegations against Konitzes, but failed to provide any legal authority on which his counterclaim is based. As the District Court noted, Konitzes' answer to Claver's counterclaim set forth specific legal reasons why the claim was without merit; Claver has made no attempt to respond by supporting his claims with applicable law. Accordingly, we conclude that the District Court did not err when it granted summary judgment which dismissed Claver's counterclaim.

¶44 We affirm the order and judgment of the District Court.

_____
/Justice

15

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

16