No. 00-784

IN THE SUPREME COURT OF THE STATE OF MONTANA

2001 MT 116


HUA FANG, M.D.,

Plaintiff and Appellant,

v.

PHYLLIS BOCK, ASSOCIATED STUDENTS

LEGAL SERVICES MONTANA STATE

UNIVERSITY, and JULIA RICE,

Defendants and Respondents.

APPEAL FROM: District Court of the Eighteenth Judicial District,

In and for the County of Gallatin,

The Honorable Jeffrey Sherlock, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Alan F. Blakley, Blakley & Velk, Missoula, Montana

For Respondents:

Sam E. Haddon, Boone, Karlberg & Haddon, Missoula, Montana

Ann Brodsky, Department of Administration, Helena, Montana

Submitted on Briefs: March 15, 2001

Decided: July 2, 2001

Filed:

_____

Clerk

Justice Terry N. Trieweiler delivered the Opinion of the Court.

¶1 Plaintiff, Hua Fang, M.D., brought this action for professional negligence and negligent supervision against Defendants, Phyllis Bock and the Associated Students Legal Services of Montana State University, in the District Court for the Eighteenth Judicial District in Gallatin County. The defendants moved for summary judgment and that motion was granted. Fang appeals the District Court's order dismissing his complaint by summary judgment. We affirm the judgment of the District Court.

¶2 Fang has raised several issues on appeal. However, all of his claims depend on his assertion that he was damaged by Bock's conduct. Since we conclude that he was not, the following issue is dispositive:

¶3 Did the District Court err when it held that the plaintiff's claim for damages based on the defendant's alleged professional negligence should be dismissed as a matter of law?

## FACTUAL BACKGROUND

¶4 Appellant, Hua Fang, M.D., is a citizen of China and was a lawful permanent resident of the United States. He was granted resident status on June 18, 1996, and was employed by Montana State University as an HIV researcher. His wife, Chiun Liu, attended classes at the University.

¶5 On November 21, 1997, Fang and his wife were involved in a domestic dispute and Chiun Liu called the police. Chiun Liu stated in her affidavit that she did not realize when she called the police that her husband would be arrested. However, Fang was arrested and charged with "knowingly and purposefully causing bodily injury by striking his wife with closed fist to the face" in violation of §45-5-206, MCA (1999). He was taken to the Gallatin County Detention Center where he was shown a video by which he was advised that a guilty plea could lead to deportation. On December 11, 1997, he and Chiun Liu

went to the Associated Students Legal Services on campus for advice. There they met with Phyllis Bock and asked her about the possibility of deportation.

¶6 Phyllis Bock contacted Julia Rice, an attorney employed by the University of Illinois at Chicago who made a presentation regarding immigration law at a continuing legal education seminar that Bock had attended. Bock told Rice that she was representing a client charged with domestic abuse, a misdemeanor. Bock asked Rice if this was grounds for deportation. Rice informed Bock that the INS would not initiate deportation proceedings until the commission of two misdemeanors. Bock relayed that information to Fang. Based at least in part on Bock's erroneous advice, Fang pled guilty to Family Member Assault in violation of §45-5-206, MCA, on February 9, 1998.

¶7 However, in 1996, Congress amended the Immigration and Nationality Act at 8 U.S.C. §1227(a)(2)(E)(i). The new law provides that domestic violence convictions are deportable offenses. Deportation can occur if the violence was directed at "a current or former spouse of the person. . . ." These provisions became effective with enactment of the Illegal Immigrant Reform Act on September 30, 1996.

¶8 Several weeks after he pled guilty, Fang received a "Notice to Appear" from the INS informing him that he was subject to deportation from this country. He hired new counsel and moved the district court to set aside his guilty plea. On June 26, 1998, the district court granted Fang's motion to withdraw his plea, stating that the failure of Bock to inform Fang of the possibility of removal to China constituted ineffective assistance of counsel. The INS then agreed to suspend further proceedings until the resolution of the charges against Fang.

¶9 On October 5, 1998, based on the advice of his new immigration attorney, Deborah Smith, Fang reached another plea agreement with the Gallatin County Attorney's office and pled guilty to an amended charge of assault in violation of §45-5-201, MCA (1999). Approximately two weeks later, Smith informed the INS of the disposition of Fang's case.

¶10 Based on the new conviction, INS counsel moved the immigration court of the United States Department of Justice to deport Fang. On March 31, 1999, an INS judge granted their motion and ordered that Fang be removed to China. The judge held that the assault that Fang pled guilty to on October 5, 1998, also constituted a crime of violence against a protected person for purposes of the federal immigration statutes.

¶11 Fang filed his complaint against Phyllis Bock and the Associated Students Legal Services of Montana State University, seeking damages for professional negligence and negligent supervision. He also sought treble damages pursuant to §37-61-406, MCA. All three claims were dismissed by summary judgment. On appeal, Fang seeks reinstatement of these three claims.

## DISCUSSION

¶12 Did the District Court err when it held that the plaintiff's claim for damages based on the defendant's alleged professional negligence should be dismissed as a matter of law?

¶13 This court reviews a district court's order granting summary judgment de novo based on the same criteria found at Mont.R.Civ.P 56(c) that must be considered by the district court. *Bruner v. Yellowstone County* (1993), 272 Mont. 261, 264, 900 P.2d 901, 903. The movant must demonstrate that no genuine issue of material fact exists. The burden then shifts to the party opposing the motion to prove, by more than mere denial and speculation, that there is a genuine issue of fact. If no genuine issue of fact exists, the court must determine whether the movant is entitled to judgment as a matter of law. *Bruner*, 272 Mont. at 264-265, 900 P.2d at 903.

¶14 The facts in this case are not in dispute. Bock admits giving erroneous advice to Fang. Fang pled guilty to family member assault based on that advice. Fang learned that Bock's advice was incorrect and because of his reliance on that advice was allowed to withdraw his plea. As a result, deportation proceedings were suspended. However, after getting independent advice, he then pled guilty to assaulting the same member of his family. Deportation proceedings were resumed and he was ordered removed from the country because of his second conviction. The real issue as recognized by the District Court is whether Fang's legal expenses and current predicament are a result of Bock's error or the inevitable consequences of conduct that he has now admitted on two separate occasions.

¶15 The District Court concluded that Fang failed to prove all the elements of a prima facie case of professional negligence. It relied on *Lorash v. Epstein* (1989), 236 Mont. 21, 767 P.2d 1335, in which this Court held that:

> In pursuing a negligence or breach of contract action against an attorney, the plaintiff must initially establish the existence of an attorney-client relationship. The plaintiff must then establish that the acts constituting the negligence or breach of

contract occurred, proximately causing damages to the plaintiff. The final requirement for the plaintiff is the need to establish that 'but for' such negligence or breach of contract, the client would have been successful in the prosecution or defense of the action.

*Lorash*, 236 Mont. at 24, 767 P.2d at 1337 *(citations omitted)*.

¶16 The District Court concluded that Fang could not satisfy the last element. He could not show that but for Bock's negligence, he would have successfully defended the charge against him. Furthermore, the District Court also held that once the first guilty plea was vacated, any adverse effect from Bock's advice was erased.

¶17 Fang contends, however, that because of Bock's advice, he was exposed to the possibility of removal from this country and had to expend substantial sums of money to avoid that exposure. The *Lorash* test, in the context of the undisputed facts before us, require that we determine whether Fang would have been exposed to removal from the country based on his conduct with or without Bock's advice.

¶18 To answer that question we must necessarily review the offenses to which he pled guilty, the statutory basis for his deportation and the Immigration Judge's explanation for her order.

¶19 Section 45-5-206, MCA (1999), which penalizes assault on a family member and is the crime to which Fang originally pled guilty, provides in relevant part:

> (1) A person commits the offense of partner or family member assault if the person:
>
> (a) purposely or knowingly causes bodily injury to a partner or family member;
>
> (b) negligently causes bodily injury to a partner or family member with a weapon; or
>
> (c) purposely or knowingly causes reasonable apprehension of bodily injury in a partner or family member.

> ¶20 Section 45-5-201, MCA, which describes misdemeanor assault, the crime to which Fang pled guilty based on the advice of a second attorney after being informed of the 1996 amendment to the Immigration Act, provides in relevant part:

(1) A person commits the offense of assault if the person:

(a) purposely or knowingly commits bodily injury to another,

. . .

(c) purposely or knowingly makes physical contact of an insulting or provoking nature with any individual; or

(d) purposely or knowingly causes reasonable apprehension of bodily injury in another.

¶21 8 USC §1227 (a)(2)(E)(i), pursuant to which Fang's removal from this country was sought by Immigration officials, provides as follows:

> Any alien who at any time after admission is convicted of a crime of domestic violence, a crime of stalking, or a crime of child abuse, child neglect or child abandonment is deportable. For purposes of this clause, the term "crime of domestic violence" means any crime of violence . . . against a person committed by a current or former spouse of the person, by an individual with whom the person shares a child in common, by an individual who is cohabitating with or has cohabitated with the person as a spouse . . . .

¶22 18 USC §16 defines "crime of violence" as:

> (a) an offense that has as an element the use, the attempted use or threatened use of physical force against the person or property of another, or

> (b) any other offense that is a felony and by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

¶23 Anne Ho, the Immigration Judge who ordered Fang's removal to China on March 31, 1999, concluded that the second offense to which Fang pled guilty was just as much a crime of violence against his spouse as the first. She noted that in support of his second plea, he stated that he "was having a heated argument with Chun Liu [his wife]. At one point [he] became very angry, threw a shirt at Chun, and otherwise made threatening gestures directed at her."

¶24 Pointing out that the title of the offense is irrelevant for purposes of Immigration law, she stated:

> [T]he respondent need not be convicted of a specifically classified state "domestic violence" law in order to be convicted of a "crime of domestic violence" as defined by the Act. As the Service correctly stated in their request for an order of removal, INA §237(a)(2)(E)(i) has two elements that transform a conviction for a particular offense into a "crime of domestic violence": first, the offense must be a crime of violence as defined; second, the offense must be committed against a "Protected Person." See INA §237(a)(2)(E)(i). When the Board determines whether an offense, as defined by a state statute, constitutes a ground of deportability, they do not rely on the state's definition of the type of crime covered as a matter of state law, but rely on the elements of the offense. *Matter of Punu*, Int. Dec. 3364 (BIA 1998); *Matter of Teixiera,* Int. Dec. 3275 (BIA 1996). Moreover, there is nothing in INA §237(a)(2)(E)(i) that requires than an alien be convicted of a specifically designated "domestic violence law" in order to be rendered removable. Rather, one need only be convicted of a "crime of violence" committed against a "protected person." A spouse is one such person. Therefore, the respondent's second argument is completely meritless.

¶25 Ho also addressed Fang's argument on appeal that a different result is compelled by the fact that Fang's assault conviction has since been expunged based on a deferred prosecution. Footnote 1 of her decision points out that:

> In *Matter of Roldan*, Int. Dec. 3377 (BIA 1999), the Board held, in pertinent part, that under the statutory definition of "conviction" provided at INA §101(a)(48)(A), "no effect is to be given in immigration proceedings to a state action which purports to expunge, dismiss, cancel, vacate, discharge or otherwise remove a guilty plea or other record of guilt or conviction by operation of a state rehabilitative statute."

¶26 Although Bock misinformed Fang, her advice did not lead to his current predicament nor has the money he spent to have his first conviction set aside changed the result. The conduct which he admitted was in violation of both statutes to which he pled guilty. Violation of either statute was grounds for deportation so long as the victim was his wife. Fang's situation regarding deportation is a result of the conduct he has admitted, and is the same following correct legal advice as it was following Bock's advice.

¶27 Therefore, Fang cannot prove that "but for" negligent legal advice he could have avoided deportation and based on our decision in *Lorash*, Bock was entitled to judgment as a matter of law. Because we conclude as a matter of law that Fang was not damaged by Bock's conduct, his other claims which are directly or indirectly predicated on that conduct must also fail.

¶28 For these reasons, we affirm the judgment of the District Court.

/S/ TERRY N. TRIEWEILER

We Concur:

/S/ KARLA M. GRAY

/S/ PATRICIA COTTER

/S/ JIM REGNIER

/S/ W. WILLIAM LEAPHART