No. 02-487

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 249N

IN RE THE MARRIAGE OF

MARY C. STEVENS,

        Plaintiff and Appellant,

   and

DANIEL L. STEVENS,

        Respondent and Respondent.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and for the County of Missoula, Cause No. DR-01-92,
Honorable John S. Henson, Judge Presiding

COUNSEL OF RECORD:

        For Appellant:

        Christopher Daly, Attorney at Law, Missoula, Montana

        For Respondent:

        Evonne Smith Wells, Attorney at Law, Missoula, Montana

Submitted on Briefs:  October 31, 2002

Decided:  September 18, 2003

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent. It shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2 Mary C. Stevens (Mary) appeals the order entered by the Fourth Judicial District Court, Missoula County, revising a hearing master's proposed distribution of marital property between the parties. We affirm the order of the District Court.

¶3 We address the following issues:

¶4 1. Did the District Court abuse its discretion by denying Mary's motion to strike the objections to the Master's proposed conclusions of law filed by Respondent Daniel L. Stevens (Daniel)?

¶5 2. Did the District Court err in revising the Master's proposed distribution of marital property?

¶6 The facts in this matter are not disputed. Mary sold her home in September 1998 and moved in with Daniel, who also owned a home. She initially placed the proceeds from the sale of her home into a separate account. The parties were married on February 6, 1999.

¶7 At the time of the marriage, Daniel had $70,000 of equity in his home. During the marriage, the parties made substantial improvements on the home, including a new addition. Daniel, a self-employed master electrician, performed extensive labor on the home, including

2

the installation of sheet rock, insulation, wiring, bathroom fixtures, linoleum, doors and trim. Mary expended $23,491 from her separate account for the costs of the improvements. Mary also expended another $11,000 from her separate account on marital and home expenses. However, the parties agreed that the home had increased in value, and in equity, by only $15,000 during the course of their two-year marriage. The parties separated in February 2001.

¶8      The matter was heard by a Master who received evidence and recommended findings of fact and conclusions of law. The Master concluded that, "[i]t is equitable that [Mary] be reimbursed all sums expended on the addition to the home, traced to her personal account, i.e., $23,491.21." Although Mary testified that all of the additional $11,000 was expended on the home, the Master was not able to trace these expenditures, noting Mary's confusing bookkeeping records and indicating that "there is insufficient evidence to establish that each one of [Mary's] $11,000.00 was expended toward the addition of the home. This money was co-mingled with other marital monies, giving both parties an equal interest and right to such monies." Nonetheless, the Master concluded that "it is equitable to credit [Mary] with one-half of the $11,000.00 she claims was earmarked for the house, i.e., $5500.00." The Master also awarded $813.68 Mary had claimed for health insurance premiums she had paid during the course of the marriage to insure Daniel and his son, $970.00 to cover the increased taxes Mary paid for filing a "married filing separately" 2000 tax return when Daniel failed to file a joint return, and $90 for miscellaneous items. Daniel was awarded the home, with its increased equity position of $15,000. The parties were also awarded various items of

3

personal property, and Mary retained her retirement IRA account. In sum, Mary was awarded cash, not including the IRA account, in the amount of $30,864.89.

¶9 The Master issued her recommended findings of facts and conclusions of law on February 8, 2002. Daniel filed objections to the Master's report on February 25, 2002, stating that he "moves this Court to set aside the Standing Master's Conclusions of Law" because the Conclusions "fail to provide for an equitable distribution of the marital estate, particularly in that it proposes that [Mary] be awarded a substantial share of [Daniel's] premarital assets." Daniel added that he would file a brief in support of his objections within five days, citing Rule 2, Uniform District Court Rules, which he did.

¶10 Mary moved to strike Daniel's objections as untimely filed. When Daniel noted that Mary's calculations had failed to account for a holiday on February 18, which made his objections timely, Mary filed an amended motion to strike, conceding Daniel's objections were timely, but arguing that his objections were "generic," that Daniel was not entitled to file a later brief in support of his objections under Rule 2, U.R.D.C., and again requesting that his objections be stricken. The District Court denied Mary's motion to strike.

¶11 The District Court then concluded that, although it was "imminently fair" and "equitable for [Mary] to be awarded the $23,491.21 she contributed towards the home," the additional distribution to Mary was inequitable because, after paying the amounts distributed to Mary from the home's value, Daniel would be left with equity of about $55,000, or $15,000 less than when the marriage began. The court noted that the marital estate shrank despite the parties' investments during the marriage because of the "unfortunate truth that

a home's appreciation is not tied to a matching dollar input." The court adopted the remaining recommendations of the Master.

¶12 Mary appeals from the District Court's orders.

¶13 ***1. Did the District Court abuse its discretion by denying Mary's motion to strike Daniel's objections to the Master's report?***

¶14 Mary argues that the District Court's denial of her motion to strike violates the Rules of Civil Procedure, which provide that within ten days of service of a master's report, a "party may serve written objections thereto . . . ." Rule 53(e)(2), M.R.Civ.P. She notes that in *Marriage of Hayes* (1993), 259 Mont. 302, 856 P.2d 227, we held that the ten-day rule was mandatory. She asserts that Daniel's objections to the Master's report were nonspecific and that his brief in support, filed after the expiration of the ten-day deadline, was improper, and that the District Court abused its discretion in denying her motion.

¶15 We review discretionary trial court rulings for an abuse of discretion. *See Konitz v. Claver*, 1998 MT 27, ¶ 32, 287 Mont. 301, ¶ 32, 954 P.2d 1138, ¶ 32. Discretionary trial court rulings include such things as trial administration issues, scope of cross-examination, post-trial motions, and similar rulings. *See Steer, Inc. v. Department of Revenue* (1990), 245 Mont. 470, 475, 803 P.2d 601, 604. We conclude that the District Court's decision whether to grant or deny Mary's motion to strike was a discretionary ruling and is therefore subject to review for abuse of discretion.

¶16 In *Marriage of Hayes*, the appellant's objections to the master's report were filed three weeks late and after the district court had not only adopted the master's recommended

findings of fact and conclusions of law, but had entered a decree dissolving the marriage. *Marriage of Hayes*, 259 Mont. at 303, 856 P.2d at 228. Thus, the district court was not faced with a request to enlarge the time for filing of objections to the master's report. Although we affirmed the judgment based upon appellant's failure to file his objections within the ten-day period, nothing in our opinion prohibited a district court, within the proper exercise of its discretion, from revising the time requirements for filing of objections. Further, such a holding would have been inconsistent with Rule 6(b), M.R.Civ.P., regarding enlargement of time.

¶17 We note that within his timely filed objections, Daniel explained that he was challenging the Master's recommended conclusions of law, specifically, that the proposed distribution of the marital estate was inequitable because Mary was awarded a substantial share of Daniel's premarital assets. The same issue was amplified in his later brief. Given this explanation and the timely filing of the initial objections, we cannot conclude that the District Court abused its discretion in denying Mary's motion to strike.

¶18 *2. Did the District Court err in revising the Master's proposed distribution of marital property?*

¶19 Mary challenges the District Court's reduction of the Master's recommended distribution to her. Her argument is focused on the $5,500 distribution which the Master recommended she receive from the home in addition to the $23,491.21 she was awarded for her investments in the home. Mary makes two essential arguments.

¶20    First, Mary takes issue with the District Court's references to the equity in the home. Referencing the District Court's comment that the Master's recommended distribution "results in [Mary] receiving the amount she put into the home plus half of the [increased] equity" in the home, Mary argues that this statement is "absolutely incorrect" because nowhere in the findings of fact and conclusions of law did the Master "apportion or attempt to apportion the increased equity in the home."

¶21    Mary is correct in her assertion that the Master's recommended distribution did not reference the home's equity. Although the Master's findings of fact noted that the current equity in the home was approximately $85,000, and that the home had appreciated approximately $15,000 during the marriage, the Master's distribution plan was not premised upon a "before and after" assessment of the home's equity.

¶22    It is also correct that the District Court's discussion and rationale, in contrast, focused heavily on the home's equity. However, this is hardly surprising, given that the home was the only substantial asset in the estate. Even the Master found that "[t]he basic issue in this matter is the division of the interest in the marital home." Thus, how a cash payment to Mary would impact Daniel's equity position in the house, the only asset of value he would retain, was appropriately considered by the District Court in fashioning an equitable distribution. Further, the District Court's use of the home's equity as a framework for its discussion, by itself, had no practical significance. It was simply an alternative way of analyzing the estate.

¶23    Secondly, Mary notes that the District Court made no finding that the Master's distribution of the $5,500.00 to her from the home was clearly erroneous. Citing *Marriage of Doolittle* (1994), 265 Mont. 168, 171, 875 P.2d 331, 334, wherein we noted that Rule 53(e)(2), M.R.Civ.P., clearly required that "the [trial] court shall accept the master's findings of fact unless clearly erroneous," Mary argues that the District Court's failure to find clear error in the Master's finding bound the District Court to the Master's distribution of the $5,500 to her, and, therefore, the District Court's revision thereof was reversible error.

¶24    It must be understood that the Master made no finding of fact regarding the $5,500. Mary claimed to have expended an additional $11,000 in home-related expenses. However, in contrast to Mary's investments of $23,491.21 for the home, which the Master was able to trace to Mary's separate account, the Master was unable to trace the additional $11,000 in expenditures, and concluded that "there is insufficient evidence to establish that each one of [Mary's] $11,000.00 was expended" on the home. Thus, a factual finding on the additional amounts Mary may have contributed was not entered. However, the Master, in her conclusions of law, determined that "it is equitable to credit [Mary] with one-half of the $11,000.00 she claims was earmarked for the house, i.e., $5500.00." This was done, not as a factual determination that Mary had expended $5,500 on the house, but as a matter of equitable distribution which the Master had devised after reviewing all of the evidence.

¶25    Daniel objected to this conclusion of law, and upon review, the District Court agreed with Daniel that the additional distribution was not equitable. However, in so doing, the District Court did not reject any of the Master's findings of fact. Rather, it simply revised

8

the distribution plan set forth in the Master's conclusions of law. Consequently, the mandate of Rule 53(2), M.R.Civ.P., that "the court shall accept the master's findings of fact unless clearly erroneous," was not violated, and Mary's argument must fail. The District Court properly acted within its discretion to revise the distribution recommended by the Master. A district court may "adopt the [Master's] report or may modify it or may reject it in whole or in part . . . ." Rule 53(2), M.R.Civ.P.

¶26     Daniel's request for an award of his attorney fees on appeal based upon his claim that Mary's appeal was without "substantial or reasonable grounds" pursuant to Rule 32, M.R.App.P., is denied.

¶27     Affirmed.

/S/ JIM RICE


We concur:

/S/ JIM REGNIER
/S/ JOHN WARNER
/S/ PATRICIA COTTER