FILED

04/26/2022

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 21-0330

DA 21-0330

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2022 MT 85N

JASON TERRONEZ,

        Plaintiff and Appellant,

   v.

DAVIS, HATLEY, HAFFEMAN & TIGHE, P.C.,

        Defendant and Appellee.

APPEAL FROM:     District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. BDV-18-0393
Honorable Elizabeth A. Best, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Adam H. Owens, Gregory G. Costanza, Granite Peak Law, PLLC,
          Belgrade, Montana

      For Appellee:

          Mikel L. Moore, Eric Brooks, Moore, Cockrell, Goicoechea & Johnson,
          P.C., Kalispell, Montana

                  Submitted on Briefs: April 13, 2022

                         Decided: April 26, 2022

Filed:

_____
                Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Jason Terronez, represented by an attorney with the law firm Davis, Hatley, Haffeman & Tighe, P.C. (DHHT), pleaded guilty to sexual assault mid-trial in September 2015. Early the next morning, Terronez's attorney tragically died by suicide. Represented by new counsel, Terronez withdrew his guilty plea and filed a civil claim for legal malpractice against DHHT. While his civil suit was pending, Terronez entered an *Alford* plea[1] in his criminal matter. The District Court granted summary judgment to DHHT, concluding that Terronez was collaterally estopped from asserting legal malpractice because his previous claim of ineffective assistance of counsel (IAC) against DHHT was unsuccessful. Terronez now appeals. We affirm for the alternative reason that Terronez's subsequent *Alford* plea prevents him from showing that DHHT's malpractice was the cause-in-fact of his original plea agreement.

¶3 In 2015, the State charged Terronez with one count of sexual intercourse without consent after a family friend's five-year-old daughter, L.W., reported that Terronez assaulted her during a sleepover with Terronez's children in Lewistown, Montana. We

---

[1] Section 46-12-212, MCA; *North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160 (1970).

summarized the facts of Terronez's criminal matter in *State v. Terronez*, of which we take judicial notice. 2017 MT 296, 389 Mont. 421, 406 P.3d 947. Attorney Jeffry Foster, who worked for DHHT, represented Terronez in the criminal matter.

¶4 Due to the nature of the crime and the relationship between Terronez and L.W.'s family, the atmosphere surrounding Terronez's criminal proceeding was tense. Early in the case, several unusual incidents occurred involving L.W.'s parents, David and Sunnshine Welton, which ultimately resulted in their exclusion from the courthouse during trial. Just days after the State charged Terronez, David confronted the presiding judge at a restaurant, causing the judge to recuse himself. During the first week of trial, Sunnshine rebuked Foster and accosted a potential juror in the restroom, and David made threats regarding the outcome of the trial to the investigating officer, Officer Jenness. Additional safety concerns arose on the fifth day of trial, after someone threw a concrete block through the windshield of Foster's vehicle while it was parked outside the Terronez residence. Foster then rented a car and moved to a different hotel to avoid detection from the Weltons, but the Weltons encountered him in the new hotel's restaurant later that evening. Though the court denied Terronez's motions for a change of venue and a mistrial, it implemented security measures at the courthouse and at Terronez's residence, and it held daily in-chambers security conferences with the parties and law enforcement. We noted in *Terronez* that these events created "a pervasive air of fear in the proceedings." *Terronez*, ¶ 31 (quotation marks omitted).

3

¶5     On the seventh day of trial, the parties reached a plea agreement.  Terronez pleaded guilty to the lesser-included offense of felony sexual assault, § 45-5-502, MCA.  Foster was found dead in his hotel room the following morning from an apparent suicide.

¶6     Represented by new counsel, Terronez moved to withdraw his guilty plea and to rescind the plea agreement.  The district court granted his motion, concluding that Terronez established "good cause" under § 46-16-105(2), MCA, because Foster had rendered ineffective assistance of counsel.  On appeal, we determined that we could not conclude from the record that Foster's representation was deficient or that Terronez was prejudiced. *Terronez*, ¶ 30.  We nonetheless affirmed the district court's decision permitting Terronez to withdraw his guilty plea "based on the extreme events that occurred during the proceeding." *Terronez*, ¶ 30.  The case was remanded, and, in November 2020, Terronez entered an *Alford* plea to felony sexual assault.  The district court sentenced Terronez to the Department of Corrections for ten years.

¶7     While his criminal matter was pending on remand, Terronez filed this civil suit for professional negligence against DHHT, alleging that Foster committed legal malpractice, resulting from DHHT's negligent supervision.  The complaint alleged that, but for Foster's deficient representation, Terronez would not have suffered the cost of obtaining a withdrawal of his guilty plea, the cost of a second trial, a loss of liberty, or the emotional distress of pleading guilty to sexual assault.  The complaint raised by and large the same issues considered in Terronez's criminal appeal.

¶8     In April 2021, DHHT moved for summary judgment on the grounds that Terronez was collaterally estopped from asserting legal malpractice and that Terronez's subsequent

4

*Alford* plea precluded him from establishing the causation and damages elements of legal malpractice. The District Court granted DHHT's motion on the first ground—that collateral estoppel barred Terronez's civil action.

¶9 We review a district court's grant of summary judgment de novo, applying "the same evaluation, based on Rule 56, M. R. Civ. P., as the district court." *Rafanelli v. Dale*, 1998 MT 331, ¶ 8, 292 Mont. 277, 971 P.2d 371 (citation omitted).

¶10 Terronez argues that the District Court erred by concluding that collateral estoppel bars his legal malpractice claim because his burden in an IAC claim is different from his burden in a civil action for legal malpractice. DHHT raises two arguments in opposition: (1) the District Court correctly concluded that the doctrine of collateral estoppel precludes Terronez from asserting legal malpractice because this Court rejected his IAC claim in his criminal appeal; and (2) Terronez's subsequent *Alford* plea bars Terronez from establishing the causation and damages elements of malpractice because Terronez cannot demonstrate that DHHT's negligence was the cause-in-fact of his original plea agreement. Because DHHT's second argument resolves this dispute, we do not consider whether Terronez's malpractice claim is barred by the doctrine of collateral estoppel.

¶11 Legal malpractice is a type of professional negligence, to which we apply the "four requisite elements of a common negligence action: (1) duty; (2) breach; (3) causation; and (4) damages." *Labair v. Carey*, 2012 MT 312, ¶ 17, 367 Mont. 453, 291 P.3d 1160 (citation omitted). The existence of a client-lawyer relationship establishes the "duty" element in a legal malpractice action. *Lorash v. Epstein*, 236 Mont. 21, 24-25, 767 P.2d 1335, 1337 (1989). An attorney breaches the duties that flow from the

attorney-client relationship when his or her actions fall below the acceptable standards of care, which are determined by "the skill and care ordinarily exercised by attorneys[.]" *Carlson v. Morton*, 229 Mont. 234, 240, 745 P.2d 1133, 1136 (1987). The causation element is satisfied "if there is an uninterrupted chain of events from the negligent act to the injury," such that "the attorney's negligent conduct was a cause-in-fact of the damage alleged." *Labair*, ¶ 24. An attorney's negligent conduct is considered the cause-in-fact if "the injury would not have occurred 'but for' that conduct." *Labair*, ¶ 24.

¶12 To prevail in this matter, Terronez must establish that Foster's performance fell below "the skill and care ordinarily exercised by attorneys" and that, but for Foster's deficient performance, Terronez would not have suffered the alleged economic and noneconomic damages that flowed from his guilty plea. *See Carlson*, 229 Mont. at 240, 745 P.2d at 1136; *Labair*, ¶ 24.

¶13 In *Fang v. Bock*, 2001 MT 116, 305 Mont. 322, 28 P.3d 456, a foreign citizen and lawful permanent resident of the United States pleaded guilty to family member assault based on incorrect legal advice from his attorney, Phyllis Bock. *Fang*, ¶ 14. Following Fang's guilty plea, the Immigration and Naturalization Service summoned him for deportation. *Fang*, ¶ 8. Represented by new counsel, Fang moved to withdraw his guilty plea, and the district court granted his motion on the ground that Bock rendered ineffective assistance of counsel. *Fang*, ¶ 8. Based on the advice of his new immigration attorney, Fang pleaded guilty to misdemeanor assault against the same member of his family. *Fang*, ¶ 9. Even though Fang pleaded guilty to a different offense, an immigration judge concluded that it too was a deportable offense under federal immigration statutes.

6

*Fang*, ¶ 10. On appeal, we rejected Fang's professional negligence and negligent supervision claims against Bock and her law firm. We held that because Fang's situation resulted in the same outcome following both correct legal advice and incorrect legal advice, Fang could not prove that, but for Bock's negligence, he could have avoided deportation. *Fang*, ¶ 27.

¶14 Terronez's situation is substantially similar to Fang's. Terronez's negligent supervision claim against DHHT would require a finding that, but for DHHT's negligence, Terronez would not have pleaded guilty during his September 2015 criminal trial and would more likely than not have prevailed on the criminal charges against him. Terronez, however, pleaded guilty to the same criminal offense a second time, relying on independent legal advice. It is immaterial that he did so through an *Alford* plea. An *Alford* plea allows a criminal defendant to "plead guilty without actually admitting to the charge if he has reviewed the evidence against him, if he is capable of making a voluntary, knowing, and intelligent choice, and if the record contains strong evidence of guilt." Commission Comments to § 46-12-212(2), MCA. An *Alford* plea is, nonetheless, still a guilty plea. *Lawrence v. Guyer*, 2019 MT 74, ¶ 8, 395 Mont. 222, 440 P.3d 1.

¶15 The "real issue" in *Fang* was whether Fang's damages and "current predicament" were a result of Bock's error or "the inevitable consequences of conduct" to which Fang admitted on two separate occasions. *Fang*, ¶ 14. In like fashion, the real issue here is whether Terronez's damages are the result of Foster's allegedly deficient representation or inevitable consequences of Terronez's sequential pleas of guilty.

7

¶16    Terronez pleaded guilty to sexual assault due to Foster's allegedly ineffective assistance of counsel, and the trial court granted his request to withdraw his guilty plea on that basis. These facts are substantially similar to the facts of *Fang*. Terronez subsequently retained new counsel and accepted an *Alford* plea, which is a guilty plea. Terronez cannot establish, therefore, that the damages he allegedly suffered as a result of his guilty plea were caused by Foster's and DHHT's negligence because he acknowledged guilt to the same offense after he withdrew his guilty plea. We conclude, as in *Fang*, that Terronez cannot prove the causation and damages elements of a legal malpractice claim against Foster or his negligent supervision claim against DHHT.

¶17    Terronez cites *Clark v. Baines*, 84 P.3d 245 (Wash. 2004) for the proposition that his *Alford* plea does not sever the chain of causation here. *Clark*, however, is not on point. Clark, the survivor of a sexual assault, brought a civil suit against her assailant, Baines, after he entered an *Alford* plea in the related criminal matter. *Clark*, 84 P.3d at 246. The trial court granted partial summary judgment to Clark on Baines's counterclaim for malicious prosecution because Baines's *Alford* plea established that Clark had probable cause to file a civil suit against him, and Baines's counterclaim therefore was collaterally estopped. *Clark*, 84 P.3d at 247-48. The Washington Supreme Court reversed because it determined that an *Alford* plea does not provide a criminal defendant a "full and fair opportunity" to litigate, and therefore the elements of collateral estoppel could not be met. *Clark*, 84 P.3d at 251. Our analysis here, however, is not premised on the doctrine of collateral estoppel but on the severance of causation by Terronez's later plea. Because Terronez entered an *Alford* plea after his initial plea was withdrawn, he cannot establish

8

that, but for Foster's negligence or DHHT's negligent supervision, he would not have pleaded guilty and would not have suffered the damages that he alleges flowed from his guilty plea. His legal malpractice claim, therefore, fails as a matter of law.

¶18 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. We may affirm a trial court on any ground supported by the record, regardless of its reasoning. *State v. Wilson*, 2022 MT 11, ¶ 34, 407 Mont. 225, ___ P.3d ___ (citations omitted). This appeal presents no constitutional issues or issues of first impression and does not establish new precedent or modify existing precedent. Because Terronez cannot establish all the elements of legal malpractice, the District Court correctly granted summary judgment to DHHT. We therefore affirm the District Court's June 3, 2021 Order Granting Defendant's Motion for Summary Judgment.

/S/ BETH BAKER

We Concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ JIM RICE
/S/ INGRID GUSTAFSON