No. 87-128

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

---

GERALD CARLSON and PRECISION
AUTOMOTIVE, INC., a Montana
corporation,

        Plaintiff and Appellant,

  -vs-

DOUGLAS K. MORTON,

        Defendant and Respondent.

---

APPEAL FROM:  District Court of the Eleventh Judicial District,
In and for the County of Flathead,
The Honorable Michael Keedy, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Richard DeJana argued, Kalispell, Montana

    For Respondent:

        Warden, Christiansen, Johnson & Berg; Stephen Berg
argued, Kalispell, Montana

---

Submitted: October 6, 1987

Decided: November 24, 1987

Filed: NOV 24 1987

_____
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

Plaintiff appeals an order of the District Court of the Eleventh Judicial District granting a directed verdict to defendant Morton. The plaintiff had sued Morton alleging that he had been negligent in handling certain legal matters for the plaintiff and had misrepresented his interests. The attorney for the plaintiff notified the court and the defendant when the matter came on for trial January 19, 1987 that he would not be calling an expert witness, as he had stated at pretrial conference. Plaintiff's attorney then made his opening statement, at the end of which, the defendant made a motion to dismiss the case for failure to provide expert testimony. Both sides briefed the question to the court. The court then heard arguments and entered an order under Rule 50, M.R.Civ.P., dismissing the case.

We affirm.

Morton was a loan officer and vice president of First Security Bank in Kalispell, Montana when he met Carlson in 1977. Morton, a law school graduate, has been admitted to the practice of law in Montana and did practice for several years before he returned to banking in the mid-1970s. He continued to moonlight practicing law after he joined the bank. He and Carlson built a friendship around their mutual interest in old cars. Morton had the opportunity to do some legal work concerning Carlson's property settlement and custody agreement when Carlson's marriage dissolved.

In 1981, Carlson purchased a business on which the Small Business Administration and the Bank of Columbia Falls were foreclosing. To aid in this purchase, Carlson asked Morton to incorporate the newly acquired business in the name of Precision Automotive, Inc. On December 18, 1981, the

2

Secretary of State approved the proposed articles of incorporation and issued a certificate of incorporation. Carlson contends, however, that Morton failed to effectively complete the corporation since he failed to file bylaws or organizational minutes for some fifteen months.

Carlson, though, operated the business as if it had been incorporated. He hired a man by the name of Jack Manning to work at Precision Automotive. Manning brought with him a pinpress that he said Carlson could use in his business. The pinpress served as security for some car repairs that Manning had not been able to pay for. On July 1, 1982, Manning approached Morton at First Security Bank about the possibility of obtaining a $2,000 loan. He was told that since he had not worked for a full year in the Flathead Valley, the bank would require a guaranty. Manning suggested that his employer Carlson could serve as a guarantor. It is not clear what happened at this point. But taking into consideration the allegations most favorable to the appellant, it appears that Carlson told Morton he was reluctant to sign a guaranty. Nevertheless, the loan was made, Carlson was named as guarantor but had not signed the note, Manning got his $2,000 after pledging the pinpress as security, and Manning then left the area. On July 25, 1982, after it was apparent that Manning had no intention of repaying the loan, Morton presented the written guaranty to Carlson for his signature as guarantor. There was some discussion as to whether Carlson should sign the guaranty. Morton encouraged him to sign and so Carlson did sign the guaranty. The guaranty note at some point was backdated to the date of the loan. Carlson had told Morton he feared that others might have an interest in the pinpress. Carlson told Morton he was thinking of removing the serial number to retard any prior lien holder's right to the pinpress.

Carlson alleges that Morton encouraged him to do that. Carlson subsequently removed the serial number.

Morton completed the incorporation of Precision Automotive in March 1983 when he finished the bylaws and organizational minutes. In April 1983, the bank sued Carlson for possession of the pinpress. In an affidavit in support of the bank's claim, Morton indicated that the serial number had been removed. The District Court upheld the bank's claim to the pinpress. Carlson's business at Precision Automotive was seriously affected by the loss of the pinpress and within several months, Precision Automotive was forced out of business. Carlson and Precision Automotive filed a cause of action on May 20, 1983 naming Morton as defendant. The complaint, as amended on October 26, 1983, alleged that Morton had violated Disciplinary Rules, 1-102(A)(4), 5-101(A), 5-104, 5-105, 5-107, 6-101 and 7-102 of the Code of Professional Responsibility. Carlson claims that the violation of these Disciplinary Rules was implied malice and as such constituted negligence on the part of the attorney.

The District Court ruled that such charges require expert testimony to delineate the degree of care expected of an attorney handling a client's affairs. The court ruled that since reasonable minds could properly differ over the plaintiff's contentions, it would be unfair to lay jurors to force them to figure out the responsibility of an attorney in this matter without the aid of an expert witness. On appeal, Carlson urges that the Code of Professional Responsibility's Disciplinary Rules state a minimum standard of care, that, when breached, establishes malpractice. He argues that these Disciplinary Rules state the attorney's duty so succinctly that an expert witness is not required to demonstrate that Morton's actions were improper and negligent. The question

of whether expert testimony is required in a legal malpractice case is one of first impression in Montana.

The Canons of Professional Ethics and their accompanying Disciplinary Rules were adopted by this Court in 1973 (see 160 Mont. xxiii) to assure the utmost integrity in the legal profession and the impartial administration of justice. State ex rel. Coburn v. Bennett (1982), 202 Mont. 20, 32, 655 P.2d 502, 508. In 1985, this Court replaced the Canons with the Rules of Professional Conduct, Montana Supreme Court Order No. 84-303, dated June 6, 1985, but the intent of governing the conduct of attorneys remained. Carlson claims Morton engaged in fraudulent or dishonest misrepresentations in violation of DR 1-102(A)(4); used a confidence of the client to his disadvantage as prohibited by DR 4-101(B); undertook employment when his interests impaired his professional judgment as prohibited in DR 5-101; did not refuse employment even though it might possibly be adverse to his interest as a bank officer as proscribed by DR 5-104 and DR 5-105, and neglected a matter entrusted to him, in violation of DR 6-101. These disciplinary rules have counterparts in the Model Rules of Professional Conduct adopted in 1985, which while differing in language and construction, establish the bounds of ethical conduct by lawyers and are employed for disciplinary purposes.

At issue is whether the applicable ethical rules create a duty in and of themselves so that a jury may determine a breach of a legal duty merely by determining whether the attorney abided by the rules. If the answer to that inquiry is negative, then an expert witness must testify so as to acquaint the jurors with the attorney's duty of care. It is fundamental that any attorney is required to use reasonable care or skill in handling his client's affairs. Clinton v. Miller (1951), 124 Mont. 463, 483-84, 226 P.2d 487, 498. The

failure to employ such skill may result in the attorney's liability for damages to his client. <u>Clinton</u>, 226 P.2d at 498. The Canons of Professional Ethics and the later Model Rules of Professional Conduct have been used exclusively in disciplinary proceedings in Montana. J. Faure and R.K. Strong, <u>The Model Rules of Professional Conduct: No Standard for Malpractice</u>, 47 Mont.L.Rev. 363, 369 (1986). When plaintiffs have based claims for negligent practices of law on attorneys' duties to abide by ethical codes, courts have dismissed such cases. In Bickel v. Mackie (N.D. Iowa 1978), 447 F.Supp. 1376, aff'd (8th Cir. 1983), 590 F.2d 341, the trial court ruled that violation of the Code of Professional Ethics is not necessarily a tortious act and does not create a private cause of action. <u>Bickel</u>, 447 F.Supp. at 1383. Similarly, in Bob Godfrey Pontiac, Inc. v. Roloff (Or. 1981), 630 P.2d 840, a used car dealer sued two attorneys who had failed in a lawsuit against the car dealer. The car dealer alleged that the two attorneys had misled the court with false statements of fact, which he claimed was in direct violation of the Code of Professional Conduct. However, the court ruled that a violation of the Code of Professional Conduct does not give rise to a private cause of action. <u>Roloff</u>, 630 P.2d at 849.

Such reasoning is supported by the Preamble to the Model Rules of Professional Conduct as promulgated by the American Bar Association. That preamble states in part:

> Violation of a Rule should not give rise to a cause of action nor should it create any presumption that a legal duty has been breached. The Rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies. They are not designed to be a basis for civil liability. Furthermore, the purpose of the Rules can be subverted

> when they are invoked by opposing parties as procedural weapons. The fact that a Rule is a just basis for a lawyer's self-assessment, or for sanctioning a lawyer under the administration of a disciplinary authority, does not imply that an antagonist in a collateral proceeding or transaction has standing to seek an enforcement of the Rule. Accordingly, nothing in the Rules should be deemed to augment any substantive legal duty of lawyers or the extra-disciplinary consequences of violating such a duty.

It is true that this Court's order of June 6, 1985, which adopted the Model Rules of Professional Conduct, adopted expressly only the Rules; it did not mention the Preamble. It also is true that the matters complained of here occurred before we adopted the Model Rules of Professional Conduct. Nevertheless, this portion of the Preamble aptly states the thinking and rationale of those who developed a complicated scheme by which to judge the conduct of attorneys in various and disparate matters, often at times where one ethical rule seems to contradict another.

In any professional negligence action, the plaintiff must prove that the professional owed him a duty, that the professional failed to live up to that duty, thus causing damages to the plaintiff. Negligence cannot be inferred from the simple fact that a loss occurred. Montana Deaconess Hospital v. Gratton (1976), 169 Mont. 185, 191, 545 P.2d 670, 673. Scott v. Robson (1979), 182 Mont. 528, 537-38, 597 P.2d 1150, 1155, citing Thompson v. Llewellyn (1959), 136 Mont. 167, 169, 346 P.2d 561, 562. The field of legal malpractice is relatively unexplored, however, it is undisputed in Montana law that one charging medical malpractice must be able to support his claim that the physician departed from the prevalent standard of medical care. Montana Deaconess

<u>Hospital</u>, 545 P.2d at 672-73; Collins v. Itoh (1972), 160 Mont. 461, 469, 503 P.2d 36, 41. Without either expert testimony identifying the doctor's care as negligent or the defendant-doctor's own testimony clearly establishing his own conduct as negligent, the defendant-doctor is entitled to summary judgment. Where plaintiffs failed to present expert testimony and the defendant-doctor did not identify his care as negligent, the District Court rightfully granted summary judgment since a jury of laypersons cannot determine for itself what caused an infection. <u>Montana Deaconess Hospital</u>, 545 P.2d at 673. The requirement that an expert witness is needed to establish the standard of care has been extended to dentists and orthodontists, Llera v. Wisner (1976), 171 Mont. 254, 262, 557 P.2d 805, 810; to manufacturers and distributors of pharmaceuticals, Hill v. Squibb and Sons (1979), 181 Mont. 199, 207, 592 P.2d 1383, 1388, to abstractors of title, Doble v. Lincoln County Title Co. (Mont. 1985), 692 P.2d 1267, 1270, 42 St.Rep. 128, 131.

Professors Prosser and Keeton may have best summarized the rationale behind this rule:

> Professional persons in general, and those who undertake any work calling for special skill, are required not only to exercise reasonable care in what they do, but also to possess a standard minimum of special knowledge and ability. Most of the decided cases have dealt with surgeons and other doctors, but the same is undoubtedly true of dentists, pharmacists, psychiatrists, veterinarians, lawyers, architects and engineers, accountants, abstractors of title, and many other professions and skilled trades.
>
> . . .
>
> Since juries composed of laymen are normally incompetent to pass judgment on

8

> [such] questions . . . it has been held in the great majority of malpractice cases that there can be no finding of negligence in the absence of expert testimony to support it . . . Where the matter is regarded as within the common knowledge of laymen, as where the surgeon saws off the wrong leg . . . it is often held that the jury may infer negligence without the aid of any expert.

Prosser and Keeton on The Law of Torts, § 32, 5th Edition, (1984).

Carlson's argument throughout has been that expert testimony was not required because lay jurors could examine the conduct of Morton and determine that it violated the Canons of Professional Ethics. And if the jurors had any doubts, they would be referred to the various Disciplinary Rules, which summarize the lawyer's obligations. Such contentions are lacking. First, we note that Carlson initially intended to introduce expert testimony from a Missoula attorney. Second, Rule 702 of the Montana Rules of Evidence specifically authorizes the use of expert witnesses "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence . . . " Third, the evidence concerning the alleged improprieties involved in this case, while seemingly straightforward, might very easily confuse and befuddle lay jurors unacquainted with general notions of civil procedure, incorporation, and professional legal responsibility. To expect a jury to sit through hours of examination and cross-examination, without the guidance of an attorney's expert testimony and then arrive at a verdict consistent with the evidence is asking much. This is not because the average juror is not capable of understanding such matters but only because he or she has never had the occasion or desire to

study such matters. The attorney's standard of care depends upon the skill and care ordinarily exercised by attorneys, a criteria that rarely falls within the common knowledge of laymen. While proof of the violation of some disciplinary rules may by itself establish negligence, such is not the case with the rules cited by Carlson. Carlson must prove not that various disciplinary rules were breached in his opinion; rather he must demonstrate that Morton failed in his legal duty. Proof of such a breach requires expert testimony. ABC Trans Nat'l Transp., Inc. v. Aeronautic Forwarders, Inc. (Ill. 1980), 413 N.E.2d 1299, 1310-11; Lenius v. King (S.D. 1980), 294 N.W.2d 912, 914; Hughes v. Malone (Ga.Ct.App. 1978), 247 S.E.2d 107, 111; Faure and Strong, The Model Rules of Professional Conduct: No Standard for Malpractice, 47 Mont.L.Rev. at 376 (1986).

It is true that there are instances in which legal malpractice actions have been submitted for fact determination without the use of expert testimony. The theory in such cases is that the attorney's misconduct is so obvious that no reasonable juror could not comprehend the lawyer's breach of duty. These include the failure of a criminal defendant's attorney to appear in court on his client's behalf, Bowman v. Doherty (Kan. 1984), 686 P.2d 112, 120; the lawyer's failure to file suit within the appropriate statute of limitations; George v. Caton (N.M.Ct.App. 1979), 600 P.2d 822, 829; Collins v. Greenstein (Hawaii 1979), 595 P.2d 275, 283; failure of the attorney to retain a first mortgage for seller on property being conveyed despite seller's clear demand for a first mortgage; Olfe v. Gordon (Wis. 1980), 286 N.W.2d 573, 576; attorney's interjection of client's claims as a permissive counterclaim in state court despite client's clear demand to file it as a separate claim in federal court is a question of material fact that may or

may not require expert testimony. Nemec v. Deering (S.D. 1984), 350 N.W.2d 53, 56; the attorney's failure to insulate one client from the debts of another client, Hill v. Okay Const. (Minn. 1977), 252 N.W.2d 107, 116; and the attorney's failure to notify a client he was resigning from the case thus resulting in a default judgment, Cental Cab. Co. v. Clarke (Md. 1970), 270 A.2d 662, 667.

We are aware of the above cases but will apply a rule similar to that for medical malpractice, where expert testimony is required, and so hold that this suit fails for the lack of expert testimony.

The District Court's order granting a directed verdict to defendant Morton is affirmed.

Justice

We concur:

Chief Justice

Justices