No. 88-88

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

SHARON TURBIVILLE,

Plaintiff and Appellant,

-vs-

ERLING HANSEN and AVIS HANSEN,
husband and wife; and AVIS CORPORATION,
a Montana corporation; and ALFRED GRAF;
and FIRST NATIONAL BANK & TRUST CO., a
North Dakota Banking Institution,

Defendants and Respondents.

APPEAL FROM: District Court of the Fifteenth Judicial District,
In and for the County of Roosevelt,
The Honorable M. James Sorte, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Timothy J. Whalen; Whalen & Whalen, Billings, Montana

For Respondent:

Phillip N. Carter; Koch & Carter, Sidney, Montana
Donna M Murphy; Rolfstad, Winkjer, McKennett and
Stenehjem, Williston, North Dakota

Submitted on Briefs: July 8, 1988

Decided: September 6, 1988

Filed: SEP 6 1988

Eth M. Harrison
Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

This is an action for damages arising from the termination of Ms. Turbiville's contractual interest in a nightclub and restaurant on the Montana-North Dakota state line. The District Court for the Fifteenth Judicial District, Roosevelt County, granted summary judgment to defendant First National Bank and Trust Co. (Bank). Ms. Turbiville appeals. We affirm.

The issue is whether the lower court erred in granting the Bank summary judgment.

In June of 1982, Ms. Turbiville entered into an agreement to purchase the State Line Club (Club) from defendants Hansen. Ms. Turbiville paid $95,000 as a down payment and signed a contract for deed for the balance. The Bank was the escrow agent.

In 1983, Ms. Turbiville entered negotiations to sell the Club to defendant Mr. Graf, a Canadian citizen. Under their agreement, Mr. Graf took possession of the Club in June but the final closing of the sale would not take place until July 31. The closing did not take place on that date, but instead was postponed several times.

On August 10, 1983, the Hansens, through their attorney, issued a notice of default alleging violation of paragraph XII of the contract for deed, in which Ms. Turbiville had agreed to maintain the Club's bar and liquor licenses in good standing:

> Until final payment hereunder, Purchaser agrees to keep and maintain said liquor and beer licenses to be acquired hereunder in full force and effect and to commit no act or failure to act which might result in the loss of said licenses. Purchaser also agrees until final payment hereunder to keep the cocktail lounge on said premises operating during the legal operating hours of licensed liquor

establishments, and to comply with all of the laws of the State of Montana, pertaining to the operation of retail liquor establishments. Any failure to fulfill the covenants of this paragraph shall be considered a default under the terms of article III of this contract.

The problem, of which Ms. Turbiville was aware, was a question on the part of the Montana Department of Revenue about continuation of the Club's state liquor license, because Mr. Graf is a Canadian citizen. The notice of default stated, in relevant part:

[Y]ou have committed acts and have failed to act in such a manner that the liquor and beer license might be lost and/or terminated by the Montana Department of Revenue, Liquor Division. You have further failed to comply with all of the laws of the State of Montana pertaining to the operation of a retail liquor establishment. The specific acts or omissions and other violations have been reported to Erling and Avis Hansen through the undersigned by Mr. Mike Otterberg, who is an investigator for the Legal Enforcement Division of the Montana Department of Revenue.

On October 12, 1983, the Hansens and their attorney went to the Bank and requested that the escrow be closed and all documents be returned to them. They presented the escrow officer with a copy of the default notice which had been sent to Ms. Turbiville. They also presented the escrow officer with an "Affidavit to Close Escrow" stating:

We, Erling Hansen and Avis Hansen, after being duly sworn upon oath, state:

1. That we are the parties who entered into that certain Contract for Deed and Conditional Sales Contract with Sharon Turbiville dated the 1st day of June, 1982.

2. That on the 10th day of August, 1983, a Notice of Default was sent to Sharon Turbiville at Bainville, Montana.

3

3. That a true and correct copy of said Notice of Default is attached hereto.

4. That the sixty (60) day grace period has expired without said default having been cured and that we have elected to cancel this contract.

(Dated and signed.)

The escrow officer copied the documents in the escrow file and gave the originals to the Hansens.

Ms. Turbiville brought this action alleging that when the contract for deed was cancelled she lost all the money she had paid on the Hansen contract, along with other damages. Her claim against the Bank alleged that the Bank breached a fiduciary duty owed to her when it delivered the documents in the escrow account to the Hansens without contacting her. The complaint alleged that "[a] reasonable and prudent businessman would have some doubt that a breach existed according to the terms of the notice of default when Alfred Graf and his attorney were present when the escrow account was turned over." (The allegation that Mr. Graf and his attorney were present is not supported by the depositions.)

The Bank moved for, and was granted, summary judgment prior to trial. Ms. Turbiville settled with the other defendants. Then she asked the court to reconsider the order granting summary judgment to the Bank. The court reaffirmed its order and Ms. Turbiville appeals.

Did the lower court err in granting the Bank summary judgment?

Rule 56, M.R.Civ.P., allows a district court to enter summary judgment when the pleadings, depositions, and other documents on file with the court demonstrate no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. This Court's review of a

4

summary judgment is based on its examination of the entire case. Shimsky v. Valley Credit Union (Mont. 1984), 676 P.2d 1308, 1310, 41 St.Rep. 258, 260.

Ms. Turbiville's argument on appeal is that there were disputed issues of material fact and that the Bank was not entitled to judgment as a matter of law. She argues that summary judgment for the Bank was not proper because 1) the contract required an actual default, not just a claimed one, before the escrow documents could be returned to the Hansens, 2) both the liquor license provision in the contract for deed and the default notice sent to her are void for vagueness, 3) it would have been impossible for her to cure the default within the time allowed because the Department of Revenue had not set hearing on the alleged liquor license violation until November 14, 1983, and 4) the affidavit requesting closure of the escrow was insufficient on its face because it did not clarify whether notice was provided to her in accordance with the terms of the contract.

The escrow agreement signed by the Bank, Ms. Turbiville, and the Hansens provided, in relevant part:

> 4. If the purchaser, or her personal representatives, heirs or assigns, shall default in making payment as agreed, or shall otherwise default in the performance of the provisions of the contract for deed, then the seller, their personal representatives, heirs or assigns upon demand shall be entitled to the immediate return from the escrow agent of the contract for deed, warranty deeds and abstracts, so that they may pursue such remedies as provided by law for the foreclosure of the contract for deed.

> . . .

> 9. The escrow agent shall be liable only to account for the money received by it and for the delivery of the instruments and documents escrowed in accordance with the terms of this agreement.

5

In this case we conclude that the only obligation of the escrow holder was to adhere strictly to the instructions as provided in the escrow agreement. See First Fidelity Bank v. Matthews (Mont. 1984), 692 P.2d 1255, 1259, 41 St.Rep. 2502, 2506. The Bank's duty, under paragraph 4 of the escrow agreement, was to "upon demand" immediately return the escrow documents to the sellers in the event of default. The agreement does not require the escrow agent to ascertain whether the demand for return of the escrow documents is technically justified. Neither does it require the escrow agent to determine whether the notice given to Ms. Turbiville was legally sufficient, whether the Department of Revenue's hearing date renders performance of the contract impossible, or whether the contract and default notice are void for vagueness. Ms. Turbiville improperly characterizes these issues as factual determinations which the Bank was responsible for making before returning the escrow documents to the seller. These determinations are appropriate for a court of law, not for the escrow agent. The remedy for omission of any of these requirements was suit against the Hansens, and all of these issues may have been relevant to the settled part of this lawsuit. These issues do not create an issue of material fact as to the claim against the Bank, because they are unrelated to whether the Bank adhered strictly to the instructions as provided in the escrow agreement.

As a final matter, we must admonish counsel for the Bank. The attachment to its brief of a document executed subsequent in time to the matters involved in this appeal was entirely inappropriate.

We affirm the summary judgment in favor of the Bank.

_____
Justice

We Concur:

_John Conway Harrison_

_R. C. McDonough_

_L. C. Gulbrandson_
Justices

7

Mr. Justice William E. Hunt, Sr., dissenting:


I dissent from the majority's conclusion that summary judgment should be granted in this case. Summary judgment is only appropriate when, viewed in the light most favorable to the nonmoving party, there are no material questions of fact in issue. Cereck v. Albertson's, Inc. (1981), 195 Mont. 409, 411, 637 P.2d 509, 510-511. In the present case, the clause in the escrow agreement that directed the First National Bank & Trust Company to return the documents it held in escrow could only be triggered by the existence of an actual default. The evidence before the Court, however, does not clearly indicate whether a default did in fact occur. Thus, a material question of fact is in dispute, and summary judgment is improper.

I also disagree with the majority's assertion that the bank had no duty to ascertain whether the demand for delivery of the documents was justified. Granted, the escrow agreement specified that the bank was to deliver the documents "upon demand" by the seller. However, the evidence shows that First National had previously gone beyond the directions of the escrow agreement for the benefit of the sellers. In all fairness, and in keeping with the purpose of escrow agreements in general, the bank should not now be allowed to claim that the limits of the contract prevented it from making any inquiry to determine whether default in fact existed or notice had been received before handing over instruments it held in trust for Turbiville.

Individuals with differing interests enter into an escrow arrangement to ensure that their rights are safeguarded by a disinterested third party, the escrow agent. Blackburn v. McCoy (1934), 1 Cal. App.2d 648, 654, 37 P.2d

153, 155. The escrow agent becomes an agent for each of the principles to the escrow agreement. First Fidelity Bank v. Matthews (1984), 692 P.2d 1255, 1258, 41 St.Rep. 2502, 2505. As such, the escrow agent owes fiduciary duties to each of its principles. Dulan v. Montana National Bank (1983), 203 Mont. 177, 182, 661 P.2d 28, 30. These duties require the agent to walk a fine line between the conflicting interests of the parties to a contract for deed placed in its possession. For this reason, it is of the utmost importance that the escrow agent remain impartial to both sides by strictly following the instructions of the escrow contract.

First National Bank & Trust breached its duty of impartiality when it failed to strictly follow the directions of the escrow agreement. The agreement instructed the bank to receive payments from Turbiville and to distribute those payments in a certain fashion. The contract made no mention of the need to take any action to collect payments. Even so, First National took it upon itself to call Turbiville whenever a payment was late. In so doing, the bank exceeded its role as defined by the escrow agreement and became, in effect, a collection agent for the Hansens, rather than a mere depository.

Since the bank went beyond the confines of the escrow agreement on behalf of the sellers, it should not be able to shield itself behind the wording of the contract to justify its failure to verify the existence of a default before surrendering the documents in its possession. The affidavit presented to the bank stated only that notice of default had been mailed to Turbiville; there was no indication that notice had been sent by certified mail as required by the contract for deed. Furthermore, the notice itself only vaguely referred to the particulars of the default. The least the bank should have done under the circumstances was

9

call Turbiville to see that she had received the notice and to clarify the terms of the default.

Sharon Turbiville paid approximately $165,000 toward the purchase of the State Line Club. The bank, as escrow agent, held the deed to the club in trust for her. It breached its trusteeship by failing to maintain an impartial stance between Turbiville, as the buyer, and the Hansens, as the sellers of the State Line Club.

For these reasons, I would reverse the District Court's order for summary judgment.

_____
Justice

10