JUSTICE TRIEWEILER
delivered the Opinion of the Court.
¶1 The Plaintiff, Babcock Place Limited Partnership (“Babcock”), filed a complaint in the District Court for the Fourteenth Judicial District in Musselshell County, in which it alleged that the Defendant Berg, Lilly, Andriolo & Tollefsen, P.C., (“the firm”) was professionally negligent and damaged the Plaintiff. Both parties moved for summary judgment. The District Court awarded summary judgment to the defendant and dismissed the action. Babcock appeals the District Court’s order granting summary judgment. We reverse the District *366 Court’s order and remand for further proceedings.
¶2 The issue on appeal is whether the District Court erred when it granted the law firm’s motion for summary judgment.
FACTUAL AND PROCEDURAL BACKGROUND
¶3 Babcock is a partnership established for the purpose of developing and selling real estate in Bozeman, Montana. In 1993, Babcock purchased real estate along West Babcock Street in Bozeman on which to develop a residential subdivision that would be known as “Babcock Meadows.” In the spring of 1993, Anson Crutcher, a limited partner of Babcock, contacted Sue Haggerty, the owner of an approximate four-acre parcel of property along West Babcock Street that was “not necessary but desirable” for the development of Babcock Meadows and offered to purchase her property. An important issue in their negotiations was Haggerty’s desire to keep one acre of her property and her home after the parcel was added to the Babcock Meadows subdivision.
¶4 Crutcher and Haggerty reached a preliminary agreement on the terms of a purchase agreement, and Crutcher contacted Mike Lilly, a partner at the Berg firm, to draft the agreements for the purchase. In an August 5,1993, letter to Lilly and Bruce Combs, a recent law school graduate who was not yet admitted to practice law in Montana, Crutcher provided the general terms for the proposed purchase. Crutcher informed Lilly and Combs that he needed “iron-clad” terms because Haggerty was “a perfect example of ‘give an inch, take a mile,’ ” and that while the property was desirable, “[tjime is of the essence.” He stated that if Haggerty would not agree to terms by the end of August, Babcock would abandon plans to purchase the Haggerty parcel and resume their initial subdivision plan.
¶5 Lilly assigned Combs to draft an initial purchase agreement with the terms supplied by Crutcher, and Combs used legal descriptions supplied by Morrison-Maierle, an engineering firm hired by Babcock to help plan and develop Babcock Meadows. However, after Combs drafted the agreement, Lilly substantially revised it because he saw potential problems with the method of property transfer.
¶6 In the revised agreement, Haggerty agreed to convey the entire four-acre parcel to Babcock and retain an irrevocable option to purchase a parcel of property amounting to, by its description, “1.0 Ac. more or less.” In exchange, Babcock agreed to pay $5,000 in earnest money and two promissory notes in the amounts of $55,000 and $ 140,000 which were secured by a trust indenture on the property. The *367 agreement provided that Empire Federal Savings and Loan would serve as the escrow agent. Haggerty and an agent of Babcock signed the purchase agreement on September 30, 1993.
¶7 Several years later, on June 28,1997, Babcock filed an application with the City of Bozeman to amend the plat for “Phase 1" of the Babcock Meadows subdivision, which now included the Haggerty property. Since Haggerty retained a trust indenture on a portion of the property, her signature was necessary for approval of the amendment. However, when presented with the plan for the property, Haggerty realized that the proposed acreage for her parcel would be .88 acres, which she concluded was inconsistent with the “1.0 Ac. more or less” printed in the property description in the pinchase agreement. The deviation apparently resulted from an error made by Morrison-Maierle while drafting the proposed property boundaries. Haggerty refused to sign the application. Babcock altered the plat to increase the acreage to .96 acres, but again, Haggerty refused to sign the application.
¶8 Babcock then sought to buy out Haggerty’s interest in the property and made a payment on the outstanding balance in the escrow account to Empire and requested that Empire transfer to it a Deed of Reconveyance, so that Babcock could submit the plat application without Haggerty’s signature. However, Haggerty was informed of the planned payment and when told that she objected to any such payments, Empire refused to accept Babcock’s payment or release the Deed of Reconveyance.
¶9 Babcock filed a complaint against Haggerty and Empire in the District Court for the Eighteenth Judicial District in Gallatin County, to compel Haggerty’s signature on the application. In late 2000, the District Court ordered that Haggerty sign the application and that Babcock pay Haggerty the difference in value between the “1.0 acres” listed in the purchase agreement and the .96 acres she actually received.
¶10 During that litigation, on February 25, 2000, Babcock filed this claim against the Berg firm, alleging that it had been professionally negligent when handling the transaction between Babcock and Haggerty and that its negligence caused several years of delay and expense to secure Haggerty’s signature on the application to amend the Babcock Meadows plat. The firm counterclaimed for unpaid legal fees.
¶11 During the course of discovery, Babcock disclosed its expert witness, James Murphy, a Montana attorney, who provided a preliminary and supplemental disclosure of his opinion that the firm *368 had failed to meet the requisite standard of care for attorneys in similar land transactions. In particular, Murphy opined that, with knowledge of Babcock’s need for expediency and accuracy in the drafting of the purchase agreement with Haggerty, Berg violated the standard of care when it: (1) had Combs, a non-attorney with no contract-drafting experience, draft the initial agreement and obtain an inaccurate legal description of the Haggerty property from MorrisonMaierle; (2) used “more or less” to cure defects in the property description when the included legal description of the Haggerty property was clearly deficient; (3) failed to include a provision that would require Haggerty to sign future applications for a final plat; and (4) failed to execute proper escrow documents that would prevent Haggerty from having “veto power over any proposed developments” and would transfer “complete control and power over the land” by escrow as soon as the escrow account balance was paid. With respect to the fourth area, the escrow agreement, the disclosure provided:
In a normal real estate situation such as this, escrow agreements are established with deeds and other documents placed therein so that as soon as the money is paid, then complete control and power over the land by the purchaser is transferred by way of escrow (usually a deed) so that the benefits of ownership to the buyer without the necessity of further litigation or complications.
¶12 On January 11, 2002, the firm moved for summary judgment. Babcock later filed its own motion for summary judgment. In its defense against summary judgment, Babcock provided the affidavit of Murphy, that restated his opinion regarding the firm’s breach of the standard of care. With respect to escrow agreements, he declared that:
“The use of an escrow agent would not have resolved the conflict between Haggerty and Babcock Place.” Defendants argue that the use of an escrow agent would [not] have resolved the conflict. Of course, the Defendants are wrong.
As the Court is fully aware, in any real estate action, one party is usually giving up money and the other party is giving up land. Neither party wants to give up their consideration without insuring the other party receives the benefit of that consideration. In this case, we clearly have a situation where Babcock gave up all of its money but never received in exchange the land which could have been subdivided pursuant to the Subdivision and Platting Act.
¶13 The District Court heard oral argument on the summary judgment motions and on April 29,2002, issued its memorandum and *369 order denying Babcock’s motion for summary judgment and granting Berg’s motion for summary judgment. The District Court entered final judgment on May 30, 2002, dismissing Babcock’s complaint with prejudice, and ordering Babcock to pay certain costs incurred by Berg. Babcock appeals the District Court’s order granting summary judgment.
STANDARD OF REVIEW
¶14 We review a district court’s decision to award summary judgment de novo. Spinler v. Allen, 1999 MT 160, ¶ 14, 295 Mont 139, ¶ 14, 983 P.2d 348, ¶ 14. We apply the same criteria a district court applies when it considers a motion for summary judgment, which is set forth in Rule 56(c), M.R.Civ.P.:
The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.
¶15 The party moving for summary judgment has the initial burden of proving that there are no genuine issues of material fact that would permit a non-moving party to succeed on the merits of the case. Spinier, ¶ 15; Montana Metal Buildings, Inc. v. Shapiro (1997), 283 Mont. 471, 474, 942 P.2d 694, 696. If the moving party meets this burden, then the non-moving party must provide substantial evidence that raises a genuine issue of material fact, to avoid summary judgment in favor of the moving party. Spinier, ¶ 15; Montana Metal, 283 Mont. at 474, 942 P.2d at 696. “Material issues of fact are identified by looking to the substantive law which governs the claim.” McGinnis v. Hand, 1999 MT 9, ¶ 6, 293 Mont. 72, ¶ 6, 972 P.2d 1126, ¶ 6 (quoted in Spinier, ¶ 15).
DISCUSSION
¶16 Did the District Court err when it granted the law firm’s motion for summary judgment?
¶17 The District Court considered the firm’s motion for summary judgment by analyzing each of Murphy’s allegations of negligence and applying the legal malpractice standards set forth by this Court in Lorash v. Epstein (1989), 236 Mont. 21, 24, 767 P.2d 1335, 1337. After doing so, it concluded that there were no issues of material fact and that, as a matter of law, the firm did not commit professional negligence. The District Court concluded that, as a matter of law, there *370 was nothing wrong with having Combs, a supervised non-attorney, draft a preliminary agreement and noted that Babcock did not allege that Combs was negligently supervised by Lilly. The District Court concluded that § 28-10-601, MCA, precluded Babcock from succeeding on its claim that the firm was negligent for using the expression “more or less” in the legal description of the property when the legal description was actually provided by Morrison-Maierle, an agent of Babcock. Addressing the third allegation, the District Court concluded that Babcock could not meet the “but for” requirement set forth in Lorash because Haggerty’s affidavit and prior deposition testimony demonstrated that she would not have signed an application for an amended plat “under any circumstances.” Therefore, it held that any contractual provision requiring her signature would have been of no benefit. Finally, the District Court concluded that the testimony established that there was already an escrow agent involved in the transaction, and that the escrow agent was not able to resolve the underlying dispute and still meet its fiduciary duties to Haggerty.
¶18 Babcock contends that the District Court erred because, among other bases for liability, the affidavit of its expert created issues of material fact as to whether a provision requiring Haggerty’s signature and a proper escrow agreement would have avoided the delay and litigation that resulted from the Haggerty property transaction, and whether reasonable care would have recognized the defective property description. Babcock contends that the testimony of Haggerty that she would not have signed a plat application “under any circumstances” is evidence that had the agreement been properly drafted, Haggerty would have, at the least, refused to sign the purchase agreement at all and Babcock could have avoided the Haggerty transaction and the resulting delay to the Babcock Meadows plat application.
¶19 The firm contends that the District Court properly dismissed the claims for the reasons stated in its order and that there are no remaining issues of material fact to decide.
¶20 What constitutes “material issues of fact” in an action for professional liability of an attorney is discussed in Lorash v. Epstein (1989), 236 Mont. 21, 767 P.2d 1335, where we held that:
In pursuing a negligence or breach of contract action against an attorney, the plaintiff must initially establish the existence of an attorney-client relationship. The plaintiff must then establish that the acts constituting the negligence or breach of contract occurred, proximately causing damages to the plaintiff. The final requirement for the plaintiff is the need to establish “[t]hat ‘but *371 for’ such negligence or breach of contract the client would have been successful in the prosecution or defense of the action.”
Lorash, 236 Mont. at 24, 767 P.2d at 1337 (quoting Christy v. Saliterman (Minn. 1970), 179 N.W.2d 288, 293-94); see also Fang v. Bock, 2001 MT 116, ¶¶ 15-17, 305 Mont. 322, ¶¶ 15-17, 28 P.3d 456, ¶¶ 15-17. We note however, that our decision in Lorash occurred prior to our decision in Busta v. Columbus Hosp. Corp. (1996), 276 Mont. 342, 916 P.2d 122, which distinguished the differences between “proximate cause” and “cause-in-fact” or the “but for” test (as stated in Lorash). We held:
In those cases which do not involve issues of intervening cause, proof of causation is satisfied by proof that a party’s conduct was a cause-in-fact of the damage alleged ... a party’s conduct is a cause-in-fact of an event if “the event would not have occurred but for that conduct; conversely, the defendant’s conduct is not a cause of the event, if the event would have occurred without it.”
Busta, 276 Mont. at 371, 916 P.2d at 139 (quoting Prosser and Keeton on Torts § 41, at 266 (5th ed. 1984)).
¶21 We conclude that Babcock has sufficiently established that there was an attorney- client relationship between Babcock and the Berg firm and proceed to the second part of the Lorash test, which requires that Babcock establish that the firm was negligent. Lorash, 236 Mont. at 24, 767 P.2d at 1337. In Carlson v. Morton (1987), 229 Mont. 234, 238, 745 P.2d 1133, 1136, we held that in order to maintain a professional negligence action, “the plaintiff must prove that the professional owed him a duty [and] that the professional failed to live up to that duty, thus causing damages to the plaintiff.” To establish the standard of duty required for an attorney, we have held that, with limited exceptions, “only expert testimony can establish the standard of care in a legal malpractice case.” Moore v. Does 1 to 25 (1995), 271 Mont. 162, 165, 895 P.2d 209, 210 (citing Carlson, 229 Mont. at 240-41, 745 P.2d at 1137-38).
¶22 Babcock provided an expert who declared by affidavit that Berg failed to meet the requisite standard of care for attorneys drafting contracts when it failed to obtain an accurate legal description of the property, failed to include a written provision requiring Haggerty’s signature on future applications for amended plats, and failed to require in the escrow agreement that, when the outstanding balance was paid, “complete control and power over the land” transferred to Babcock without the need for Haggerty’s signature. While the firm has submitted expert opinion evidence to refute *372 Murphy’s opinion, we conclude that the conflicting evidence merely raises a material issue of fact, regarding the proper standard of care, which must be resolved by a trier-of-fact.
¶23 Finally, we must consider whether there is evidence that the firm’s alleged negligence was the “cause-in-fact” of Babcock’s injuries. The firm contends that there were three facts which preclude a finding that its conduct was the “cause-in-fact” of Babcock’s injuries: (1) Babcock’s agent provided the erroneous legal description of the Haggerty property that led to Babcock’s eventual injuries; (2) Haggerty’s refusal to sign the application “under any circumstances;” and (3) the escrow agent’s adherence to its fiduciary duties to Haggerty required that it refuse to transfer the Deed of Reconveyance where the parties disputed the acreage that was the subject of their contract.
¶24 With respect to the erroneous legal description, we conclude that there is a remaining issue of material fact as to whether the firm’s independent failure to recognize a problem with the legal description contributed as a cause of Babcock’s damages. Murphy’s affidavit states:
The standard of care requires an attorney practicing real estate law in Montana to recognize that the description delivered by the engineer could never be a tract which Mrs. Haggerty could receive - by option or otherwise. The failure of Combs caused confusion and delay. She did not understand what “acre” she would receive. Combs did not understand it either, but he had the obligation to his client to avoid misunderstanding on the part of Mrs. Haggerty, not create it.
It is alleged by Babcock and supported by Murphy, that an attorney exercising the requisite standard of care would have noticed that the description of the Haggerty property was inadequate and requested clarification or refused to draft the purchase agreements. It is alleged that this recognition would have occurred in spite of any misinformation provided by the engineer. Therefore, we conclude that there is an issue of material fact regarding the merits of the claim that the firm was negligent for failing to recognize the incorrect legal description.
¶25 With respect to a provision requiring Haggerty’s future signature on plat applications, we agree with the firm that there is nothing in the record to suggest that its failure to include such a provision was a “cause-in-fact” of Babcock’s injuries. Nothing in the record suggests that Haggerty’s obstinate refusal to sign any plat documents “under any circumstances” due to the proposed acreage apportioned to her would have been changed by an express requirement for her signature, *373 nor that the subsequent delay to pursue litigation would have been shortened. Rule 56(e), M.R.Civ.P., requires that “an adverse party may not rest upon the mere allegations or denials of the adverse party’s pleadings.” Accordingly, we conclude that the firm is entitled to partial summary judgment on this issue.
¶26 Finally, with respect to the escrow agreement, we note that the District Court stated:
It is immaterial whether an escrow was established to hold the titled documents as the history of the transaction with Haggerty showed that she would object to the release of any documents from the escrow agent so long as the acreage she was to receive was disputed .... As is common in the real estate industry, and as evidenced by the actions of Empire, an escrow agent will not typically place itself into the middle of a dispute between the parties to the escrow agreement, each of whom the escrow agent owes a fiduciary duty. The contention of Babcock’s expert, that some type of escrow would have prevented the dispute has no basis. Perhaps when he gave his opinion in this regard, he was not aware that an escrow had been established and that such an escrow was not effective to resolve the dispute between Haggerty and Babcock. In any event, it is apparent that Empire, as escrow agent, was not going to release any escrowed documents without the full agreement of all affected parties.
In essence, the District Court concluded that Babcock could not prove that the language of the purchase and/or escrow agreement was the “cause-in-fact” of Babcock’s damages because regardless of the language used, an escrow agent would not have released the documents without the agreement of the parties or later court order.
¶27 Therefore, we must consider the obligations of the escrow agent in this transaction. It is without dispute that escrow agents “occup[y] a fiduciary responsibility to the parties to [an] escrow transaction.” Brandt v. Sande, 2000 MT 98, ¶ 28, 299 Mont. 256, ¶ 28, 1 P.3d 929, ¶ 28 (citations omitted). However, we have held that “the duty of an escrow agent is narrowly defined by law. An agent is bound to comply only with the instructions of the parties to the escrow agreement and may not exceed this authority.” Brandt, ¶ 28 (citation omitted). In addition, we have held that an escrow agent “fulfilled a legal, fiduciary duty by strictly following the instructions of the principals to [an] escrow account.” Brandt, ¶ 29.
¶28 In Turbiville v. Hansen (1988), 233 Mont. 487, 761 P.2d 389, we considered an escrow agreement created for a similar purpose. In *374 Turbiville, parties entered into a contract for deed and placed the documents in escrow. The escrow agreement included an instruction that if the buyer defaulted on the contract for deed, the seller “upon demand shall be entitled to the immediate return from the escrow agent of the contract for deed, warranty deeds and abstracts, so that they may pursue such remedies as provided by law for the foreclosure of the contract for deed.” Turbiville, 233 Mont. at 490, 761 P.2d at 392. The buyer allegedly defaulted, and the seller demanded that the escrow agent return the escrow documents. The escrow agent returned the documents without giving any notice to the buyer. Turbiville, 233 Mont. at 489,761 P.2d at 391. In the buyer’s suit against the seller and escrow agent, we held:
[T]he only obligation of the escrow holder was to adhere strictly to the instructions as provided in the escrow agreement. The [escrow agent’s] duty, under paragraph 4 of the escrow agreement, was to “upon demand” immediately return the escrow documents to the sellers in the event of default. The agreement does not require the escrow agent to ascertain whether the demand for return of the escrow documents is technically justified. Neither does it require the escrow agent to determine whether the notice was legally sufficient ... or whether the contract and default notice are void for vagueness.... These determinations are appropriate for a court of law, not for the escrow agent. The remedy for omission of any of these requirements was suit against the [sellers]... These issues do not create an issue of material fact as to the claim against the [escrow agent], because they are unrelated to whether the [escrow agent] adhered strictly to the instructions as provided in the escrow agreement.
Turbiville, 233 Mont. at 491, 761 P.2d at 392 (citation omitted).
¶29 Applying our decision in Turbiville, we conclude that the District Court’s analysis regarding escrow agents was incorrect and that the agent’s fiduciary duties to the parties are as provided by the written instructions and agreement.
¶30 Furthermore, we conclude that Babcock offered sufficient proof that if the language of the escrow agreement was negligently drafted, it was a “cause-in-fact” of Babcock’s damages. The language that Murphy contends should have been included in the agreement would have given Babcock “complete power and control” over Haggerty’s property after paying the purchase price. The Deed of Reconveyance would have eliminated the need for Haggerty’s signature on the *375 application to amend the plat, and, therefore, have eliminated the delay that Babcock contends caused him damage.
¶31 In summary, we conclude that there is an issue of material fact as to whether the firm followed the requisite standard of care when it drafted the escrow agreement for the purchase of the Haggerty property, and whether the purported terms of the escrow agreement satisfied the requisite standard of care. This issue, in addition to the issue of whether the law firm violated the standard of care when it adopted the legal descriptions provided by Morrison-Maierle, are issues to be determined by the trier-of-fact.
¶32 For the foregoing reasons, we reverse the judgment of the District Court and remand for further proceedings consistent with this Opinion.
CHIEF JUSTICE GRAY, JUSTICES REGNIER and DISTRICT JUDGE LANGTON, sitting for JUSTICE LEAPHART concur.