

FILED

08/24/2021

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 21-0040

DA 21-0040

## IN THE SUPREME COURT OF THE STATE OF MONTANA

### 2021 MT 214N

THOMAS KONESKY,

        Plaintiff, Counter-Defendant,
and Appellant,

    v.

KEVIN KELLER, KAREN L. REIFF, CHURCH, HARRIS,
JOHNSON & WILLIAMS, P.C., and JOHN DOES A-Z,

        Defendants, Counter-Plaintiffs,
and Appellees,

KEVIN KELLER,

        Third-Party Plaintiff,

    v.

DONITA KONESKY,

        Third-Party Defendant.

FILED

AUG 24 2021

Bowen Greenwood
Clerk of Supreme Court
State of Montana

APPEAL FROM:    District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. BDV-19-0568
Honorable Elizabeth A. Best, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

        Samir F. Aarab, Caitlin Boland Aarab, Boland Aarab PLLP, Great Falls,
Montana

    For Appellee:

        Mikel L. Moore, Eric Brooks, Moore, Cockrell, Goicoechea & Johnson,
P.C., Kalispell, Montana

Submitted on Briefs: June 30, 2021

Decided: August 24, 2021

Filed:

_____
                Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Thomas Konesky appeals an Eighth Judicial District Court order granting Church, Harris, Johnson, & Williams, P.C.'s ("CHJW") motion for summary judgment on Count I of Konesky's Amended Complaint, alleging legal malpractice. Konesky argues that the District Court erred by determining a material fact without considering expert testimony, that it misunderstood material facts related to his malpractice claim, and that it applied the wrong legal standard. We reverse and remand the matter for further proceedings.

¶3 Konesky owned a ranch in Great Falls that had been in his family since the 1940s. In 2007 Konesky decided to sell the ranch in order to retire. As a condition of any sale, however, he and his wife wanted to be able to remain living in the ranch's farmhouse. In 2012 Kevin Keller, a rancher from Stanford, offered to buy the ranch. Keller intended to use the ranch for cattle only, so he proposed terms of purchase allowing the Koneskys to continue residing there. Konesky retained CHJW to help facilitate the sale; Karen Reiff would be CHJW's primary attorney handling the transaction.

¶4 Reiff drafted the majority of the documents effectuating the transaction, including a promissory note, pasture lease agreement, warranty deed, and bill of sale. The sale was

3

financed by Konesky. One of the primary terms Konesky wanted included as part of the deal was the right to continue living rent-free in the property's residence. As Konesky put it, he did not want to "pay rent to someplace [he] was born and raised." Reiff, however, did not draft the final residential lease agreement. Instead, Keller's attorney sent her a lease agreement which she reviewed and presented to Konesky for his signature. The lease agreement allowed the Koneskys to live rent-free in the ranch house until 2027, but it contained the following provision:

> If the dwelling on the leased premises should be totally destroyed or damaged by fire or other casualty to an extent that the lease premises is rendered untenantable and cannot be repaired within thirty (30) working days, then [Keller] may, at [Keller's] option, terminate this Lease by giving written notice to [Konesky] within ten (10) days after the date of such damage, of [Keller's] election to terminate this Lease.

¶5 The parties completed the transaction, and for five years the Koneskys continued to reside in the ranch house without issue. In September 2017 the ranch house burned down. Though the Koneskys were uninjured, the house was a complete loss. Konesky hoped that the fire insurance proceeds would allow for the purchase of a modular home to place on the property. But six days after the fire, citing the above lease provision, Keller unilaterally terminated Konesky's lease. Further, despite the fact that the sale documents Reiff prepared required Keller to obtain fire insurance in an amount acceptable to Konesky and jointly payable to both Konesky and Keller, Keller obtained only $175,000 in fire insurance, payable solely to himself. Keller eventually used these insurance proceeds, along with a private loan, to reduce his debt to Konesky rather than to rebuild the ranch house.

4

¶6 Konesky went to CHJW for advice on how to proceed and how to possibly retain some right to continue living on the property. While CHJW discussed the possibility of litigation with Konesky, discussion soon stalled. In May 2019, after discussions with its malpractice carrier, CHJW ceased representing Konesky. Konesky obtained new counsel and filed the underlying suit against Keller for breach of contract, breach of implied covenant of good faith and fair dealing, and violating the Residential Landlord Tenant Act, and against CHJW for professional negligence.

¶7 Konesky alleged CHJW breached its duty to "negotiate, draft, and review the documents involved" in the transaction to ensure they "effectuated the bargain reached by [Konesky] and Mr. Keller, protected [Konesky's] financial interest in the Property, and secured [Konesky's] stated interest in living on the Property rent-free through 2027." Deposition testimony would reveal that Reiff had drafted an unused residential lease agreement for the transaction that was never shown to Konesky or to Keller's attorney. This draft lease agreement did not contain the language on which Keller relied to terminate Konesky's lease, and Reiff did not recall why she did not send it to either Konesky or Keller's attorney for consideration.

¶8 In June 2020, Konesky moved for summary judgment against Keller on all counts; the District Court granted the motion as to liability on Konesky's claims for breach of contract and breach of implied covenant of good faith and fair dealing, leaving the issue of damages for trial. CHJW then moved for summary judgment on Konesky's professional negligence claim, arguing that in light of the District Court's summary judgment ruling against Keller, as a matter of law CHJW's conduct did not cause Konesky any damages.

5

Konesky argued that Keller's liability and CHJW's liability are not necessarily mutually exclusive, that whether CHJW's representation fell below the standard of care is the subject of expert testimony, and that the expert disclosure deadline had not yet passed. The District Court rejected these arguments and granted CHJW's motion. Konesky then moved for certification of judgment on the CHJW summary judgment order pursuant to M. R. Civ. P. 54(b), which the District Court granted. In the meantime, Keller amended his pleadings to assert several counterclaims against the Koneskys related to the fire that destroyed the residence. Trial on the claims between Konesky and Keller is scheduled for late 2022.

¶9 "We review a district court's decision to award summary judgment de novo." *Babcock Place P'ship v. Berg, Lilly, Andriolo & Tollefsen, P.C.*, 2003 MT 111, ¶ 14, 315 Mont. 364, 69 P.3d 1145 (citation omitted). Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Labair v. Carey*, 2012 MT 312, ¶ 15, 367 Mont. 453, 291 P.3d 1160 (quoting M. R. Civ. P. 56(c)(3)) (internal quotation marks omitted). A material fact is a fact that involves "the substantive law which governs a claim." *Babcock*, ¶ 15 (citation, internal quotation marks omitted).

¶10 The four elements of a legal malpractice claim are: "(1) the attorney owed the plaintiff a duty of care; (2) the attorney breached this duty by failure to use reasonable care and skill; (3) the plaintiff suffered an injury; and (4) the attorney's conduct was the proximate cause of the injury." *Labair*, ¶ 20 (citations omitted). "To establish the standard

6

of duty required for an attorney, we have held that, with limited exceptions, 'only expert testimony can establish the standard of care in a legal malpractice case.'" *Babcock*, ¶ 21 (quoting *Moore v. Does 1 to 25*, 271 Mont. 162, 165, 895 P.2d 209, 210 (1995)). The existence of a legal duty, however, is a question of law. *Wood v. Anderson*, 2017 MT 180, ¶ 25, 388 Mont. 166, 399 P.3d 304 (citation omitted).

¶11  The District Court concluded that Konesky "offered no authority to support the legal duties he says CHJW owed." The court explained that drafting a contract imposes no duty to ensure its performance, that lawyers have no duty to require certain terms be included in final documents a client signs, and that lawyers have no duty to prevent a breach of contract. Konesky did not allege, however, that these were legal duties CHJW owed him. The specific professional duty Konesky alleged CHJW owed him was "a duty to negotiate, draft, and review the documents involved in this Property transaction so that they effectuated the bargain reached by Mr. Konesky and Mr. Keller, protected Mr. Konesky's financial interest in the Property, and secured Mr. Konesky's stated interest in living rent-free through 2027." CHJW has characterized its duty owed to Konesky as a duty to "reasonably secure to Mr. Konesky, under the circumstances, the rights and remedies which real estate sale-and-purchase contracts can reasonably be expected to secure." Konesky agrees that this is, at the minimum, the duty CHJW owes him. Konesky emphasizes that he never saw the lease document Reiff had drafted and thus did not choose instead to sign Keller's lease.

¶12  An attorney's failure "to use reasonable care or skill in handling his client's affairs" may leave the attorney liable for damages to his client. *Carlson v. Morton*, 229 Mont. 234,

7

237, 745 P.2d 1133, 1135 (1987). An attorney-client relationship—which the parties do not dispute existed between Konesky and CHJW—is sufficient to establish the existence of this duty. *See Labair*, ¶¶ 17–18 (noting that a signed retainer agreeing to pursue a client's medical malpractice claim is sufficient to establish an attorney-client relationship and demonstrate the attorney owed the client a duty relative to that claim); *Babcock*, ¶¶ 20–21 (concluding there was evidence of an attorney-client relationship and moving to the second element of professional negligence test); *Spencer v. Beck*, 2010 MT 256, ¶ 14, 358 Mont. 295, 245 P.3d 21, *abrogated in part on other grounds in Labair*, ¶¶ 23–24 (holding the allegation of an attorney-client relationship sufficient to meet the first element of a professional negligence claim to defeat a M. R. Civ. P. 12(b)(6) dismissal). The District Court thus erred as a matter of law by concluding that "[n]o legal duty has been shown" by Konesky. *See Wood*, ¶ 25; *Babcock*, ¶ 15.

¶13 Once a duty is established, the plaintiff must demonstrate that "the attorney breached this duty by failure to use reasonable care and skill." *Labair*, ¶ 20. What constitutes "reasonable care and skill" is established through expert testimony. *Babcock*, ¶ 21. Here, the "duties" the District Court concluded that Konesky failed to support are better characterized as examples of either how CHJW allegedly breached its duty to use reasonable care and skill in facilitating the transaction or how that breach allegedly caused Konesky damages. And because the District Court entered its Order before the close of discovery and before the deadline to produce expert testimony, Konesky cannot at this point be faulted for lacking sufficient evidence regarding a standard of care

8

to support these claims.[1] To that end, because CHJW argues it did not breach its duty to Konesky, and there is no expert testimony—undisputed or otherwise—establishing the scope of that duty, there are still disputed issues of material fact relative to any breach. Because Konesky's damage claims against Keller have not been resolved, there also remain questions whether CHJW's alleged failures caused Konesky damage. The District Court's Order granting summary judgment in CHJW's favor was therefore premature and is reversed. *See Labair*, ¶ 15; *Babcock*, ¶ 15; *see generally Carlson*, 229 Mont. at 240–41, 745 P.2d at 1137–38.

¶14   We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. We conclude that disputed issues of material fact remain on Konesky's legal malpractice claim and decline to address the parties' additional arguments. We therefore reverse the District Court's October 14, 2020 order granting summary judgment in CHJW's favor and vacate the final judgment entered pursuant to that order. The matter is remanded for proceedings consistent with this Opinion.

_____
                                                Justice

---

[1] CHJW argues that pursuant to M. R. Civ. P. 56(f) and *Rosenthal v. County of Madison*, 2007 MT 277, ¶¶ 38–43, 339 Mont. 419, 170 P.3d 493, if Konesky sought to oppose summary judgment with expert testimony he was required to specify by affidavit the specific evidence the expert testimony would provide and why it could not be timely presented. We do not find this argument persuasive as applied to the present situation, where Konesky claims he had not yet submitted his expert report because the District Court entered its Order before the deadline to do so.

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

10